## SUPREME COURT.

### In the Matter of the Application of Henry E. Bartlett.

An application by a successor in office for the delivery over to him of the books, papers, &c., of his predecessor removed from office, (1 *R. S.* 124, §§ 50, 51,) although it involves the questions of the legality of the removal of the one and the appointment of the other, does not prevent either party from resorting to the more solemn and formal method of redress by *action*. The remedies are concurrent; the one is summary, preliminary, and partial in its operation, the other is final and complete, and comprehends all the profits and benefits of the office.

The governor under the statute has the sole and exclusive power of *removal* and *appointment* to office *during the recess of the senate*. The constitution of 1846, or any legislation since, has not changed the statute upon this subject as it then existed.

*New-York Special Term, May*, 1854. This is an application to compel Richard L. Morris to deliver over to Henry E. Bartlett all the books and papers in his custody, as health-officer of the city of New-York, or in any way appertaining to the office.

It appears that Dr. Morris was nominated health-officer by the governor, and appointed by him with the consent of the

senate, on the 17th of February, 1852, for the term of two years, and that on the 21st of the same month he subscribed and filed with the clerk of the city and county of New-York the oath of office prescribed by law.

On the 21st of April last the governor issued a supersedeas, removing Dr. Morris from this office, which was on that day duly served on him, and on the 22d of the same month Dr. Bartlett was appointed and commissioned as his successor; and he duly filed his commission with the clerk of the city and county of New-York, and took and subscribed the oath of office on that day. On the 25th of April a written notice was personally served on Dr. Morris, demanding the delivery to Dr. Bartlett of all the books and papers in his custody as health-officer, and everything appertaining to the office, and to give him possession of the same. This Dr. Morris refused to do, under the advice of counsel, on the ground that the senate was continuously in session for the period of the expiration of the term for which he was originally appointed (the 17th of February, 1854) until the 17th of April, 1854, and that the governor having neglected to appoint a successor *during such session of the senate*, had no power to make the appointment *without their consent*, and that under the law (1 *R. S.* 115, § 9, 1*st ed.*) authorizing incumbents to hold over until their successors should be duly appointed, he continued legally in possession.

SAMUEL BEARDSLEY & WM. CURTIS NOYES, *for application.*
CHARLES O'CONOR, *opposed.*

CLERKE, Justice. I. The first objection made on behalf of Dr. Morris is, that this is not the proper remedy, and that the only mode of inquiring into this controversy is by an action equivalent to what was formerly known as a proceeding by information, in the nature of a *quo warranto.*

Doubtless, the whole question of the right to the office—the validity of the removal of Dr. Morris and of the appointment of Dr. Bartlett—is involved in the present proceeding. It constitutes an essential element of it, and the result of this application will exclusively depend on the conclusion to which I shall

arrive, as to which of the contestants is entitled to the office. But does the right to proceed by action render this proceeding unnecessary, or inapplicable to the circumstances of this case?

The statute is very explicit. (1 *R. S.* 124, §§ 50, 51, 1*st ed.*) It says: "Whenever any person shall be removed from office, &c., he shall on demand deliver over to his successor all the books and papers in his custody as such officer," &c. "If any person shall refuse or neglect to deliver over to his successor any books or papers, &c., such successor may make complaint thereof to the chancellor, to any justice of the supreme court, &c. ; and if such officer be satisfied by the oath of the complainant and such other testimony as may be offered, that any such books or papers are so withheld, he shall grant an order, &c."

Here the *object* is to compel the delivery of the books and papers by a summary proceeding, to which any person duly appointed to an office is absolutely entitled without any qualification or reservation. The only questions to be ascertained by the judge, to whom the application is made, are, has the predecessor been legally removed, and has the claimant been legally appointed?

But surely it does not follow, because such an application is permitted and entertained, that it supersedes the more regular and formal redress by action. The remedies are concurrent; the one is summary, preliminary, and partial in its operation; the other is final and complete, and comprehends all the profits and benefits of the office. This summary application bears analogy to many of our most familiar *provisional* remedies. For instance, in an application for an injunction, the judge has to anticipate and in a manner to predetermine the result of the controversy, before he grants the order; he has to satisfy himself even on *ex parte* statements of the validity of the claim; but this by no means interferes with the due progress of the controversy to a complete and final adjudication in the regular course of judicial inquiry; and in the present application, whatever may be my decision, it cannot operate in any respect to prevent either party from resorting to the more solemn and formal method of redress by action.

I have no doubt, therefore, that this proceeding is regular, and that the only question for me to consider is, whether the removal of Dr. Morris, and the subsequent appointment of Dr. Bartlett, are valid.

II. The power of removal by the governor and of appointment by him during the recess of the senate seems to be incontrovertible; unless the constitution of 1846 has modified or repealed the law as it then existed. With regard to this very office of health-officer, the statute expressly says, (1 *R. S.* 115, § 17, *1st ed.*,) he "may be removed by the governor during the recess of the senate;" and with regard to offices generally, (1 *R. S.* 123, § 42, *1st ed.*,) "the governor may supply all vacancies that may happen during the recess of the senate." And how, among other modes, may a vacancy happen? The statute (1 *R. S.* 122, § 37, *1st ed.*) enumerates seven methods in which vacancies may occur; and the third which it specifies is, "removal from office." The power, then, of removal and appointment "during the recess of the senate" is given, in the most positive terms, unconditionally and without qualification. Can it be alleged that he cannot remove of his own arbitrary will, without sufficient cause, and that this cause must be so palpable as to impose upon him the accountability of judicial action, and render such action reversible by any other authority? Where is the authority which the law has provided for that purpose? None can be found, for none was intended; the exercise of the power was necessarily left to the exclusive judgment and discretion of the chief executive authority; and whatever might have been his motives, on which it is entirely beyond the sphere of my duty to speculate, he is subject to no control, except his own sense of propriety and duty. I believe it is conceded that both of the present contestants are professionally competent, and as members of society unquestionably worthy and irreproachable; but, even if it were otherwise, and it were clearly manifest that the successor was greatly inferior both morally and professionally to his predecessor, this circumstance could in no degree interfere with the validity of the removal or the appointment, much less can it be affected

by the circumstance, that although the governor had an ample opportunity of obtaining the co-operation of the senate from the expiration of Dr. Morris's term until the adjournment of that body, yet he deferred action on the subject until after that event. Whatever may be the relative qualifications of the parties,—whatever may be the circumstances attending the removal of the one and the appointment of the other,—whatever may be the motives by which others may suspect him to have been actuated in his course on this occasion, the law gives no other authority any right to speculate upon those motives, or to disturb that action. The faithful performance of duty in this respect is like many other duties which are necessarily what may be denominated duties of " imperfect obligation ;" they are not cognizable by law, because they could not be practically enforced by law, or rather because the attempt to do so would produce much more mischief than the evil sought to be remedied.

The statute, as it existed in 1846, when the present constitution was adopted, having given to the governor the sole and exclusive power of removal and appointment *during the recess of the senate*, has that instrument, or has any law subsequently enacted, made any alteration in the law ?

That constitution (*Art. I*, § 17) provides that such acts of the legislature as were then in force shall be and continue the law of this state, subject to such alterations as the legislature shall make concerning them, abrogating expressly, indeed, such acts as are repugnant to it. Art. X, § 2, provides that all officers, whose election or appointment is not provided for by the constitution, &c., shall be elected by the people, or *appointed as the legislature may direct ;* and sections 5, 7, and 8 of the same article empower the legislature to provide for filling vacancies in office, to provide for the removal from office, and to declare the cases in which any office shall be deemed vacant, when no provision is made for that purpose in the constitution. This, of course, gives the legislature complete control over those subjects ; but it makes no change whatever in the laws which the legislature had previously enacted in rela-

tion to them; for these, like all other laws in force at the adoption of the constitution, were to continue in force, subject to such alterations as it may think proper to make, (*Art. I,* § 17.) Those sections are entirely consistent: if the legislature have not deemed it expedient to *direct* any new mode of appointment or removal, or of filling or creating vacancies, they *direct*, to all intents and purposes, that the laws existing on those subjects in 1846 should continue as they were; and being in force, unrepealed, or unmodified by any subsequent legislation, the governor had plainly the power to remove Dr. Morris, and to appoint Dr. Bartlett as his successor, during the recess of the senate. Dr. Morris, therefore, was erroneously advised to retain possession of the office, and to refuse the delivery to Dr. Bartlett of the books and papers appertaining to it.

The application made on behalf of Dr. Bartlett must be granted.