Van Brunt, P. J.
An examination of the careful opinion written by the learned referee * m this case renders it entirely unnecessary for the court to reiterate the arguments so well presented by him in support of the conclusion at which he has arrived. It is sufficient therefore for us to say that we adopt the views expressed by the referee and for the reasons stated by him affirm the order appealed from.
The order should be affirmed with costs and disbursments.
Macomber and Brady, JJ., concur.

 Opinion of Hon. Hooper C. Van Vorst, Referee.
The relator is a corporation organized under the laws of the state of New Work, and is engaged in the business of carrying passengers for hire in the ■city of New York. The capital stock of the company was assessed for the purpose of taxation in the city of New York for the year 1887 at $2,263,663. This assessment was made pursuant to the provisions of chapter 456 of the Raws of 1857. The relator applied to the tax commissioners to reduce the •said valuation on the ground that it was excessive, erroneous and unequal, being at a rate greater than the actual value of said stock, and proportionately *179 higher than the taxable valuation set upon other real and personal property in said city and county by the said commissioners for the same year and upon, the same assessment rolls.
The commissioners declined to reduce the assessment below the sum last named. Thereafter, in July, 1887, the relator applied for and obtained a writ of certiorari for the purpose of reviewing the assessment aforesaid, and an order of reference was entered to take testimony.
The relator desires to introduce testimony both on the subject of overvaluation of its capital stock and on the subject of alleged unequal valuation as compared with other properties on the same roll for the same year. The relator claims the right to introduce testimony on both the subjects by virtue of the provisions of chapter 269 of the Laws of 1880, entitled "An act to provide for the review and correction of illegal, erroneous and unequal assessments/ This act provides for the review of an assessment upon three grounds:
1. Illegality.
2. Over-valuation.
3. Unequal or disproportionate valuation.
• The respondents claim that in the city and county of New York a review of' an assessment by certiorari is limited to the grounds of illegality and overvaluation, and that in such a' proceeding, no review may be had for the purpose of correcting an alleged inequality. The respondents base their claim upon the provisions of chapter 311 of the Laws of 1885, section 2, amending section 821, of the consolidation act (chapter 410 of the Laws of 1882).
The question now presented is whether the act of 1885, chapter 311, restricting the grounds of review by certiorari in the city and county of New York, is obnoxious to the sixteenth section of article 3 of the constitution of the state of New York and section 1 of the fourteenth amendment to the constitution of' the United States.
The questions raised are of importance, and I shall consider each separately and at length.
Hirst. It is contended on behalf of the relator that chapter 311, Laws of 1885, entitled “ An act to amend chapter four hundred and ten of the Laws, of eighteen hundred and eighty two, entitled ‘ An act to consolidate into one-act and to declare the special and local laws affecting public interests in the-city of New York,’ ” is unconstitutional, as being obnoxious to the provision, of the constitution, which declares that “ No private or local bill which maybe passed by the legislature shall embrace more than one subject, and that, shall be expressed in its title.”
I am precluded from considering abstractly the question as to whether the-title of the act (chapter 311, Laws of 1885), expresses the subject to which the act relates. The present case falls clearly within the rule laid down by the court, of appeals in the cases of 2 he People ex rel. City of Rochester v. Briggs (50 N. Y., 561), People ex rel. Woods v. Crissey (91 N. Y., 616, 640), Matter of Paul (94 N. Y., 497), Harris v. People (59 N. Y., 599, 602), Board Water Commissioners of Clinton v. Dwight (101 N. Y., 9, 11). The titles of several acts, the constitutionalty of which have been upheld by the court of appeals, were substantially no broader than that of the one under consideration, and I am inclined to. hold that the position taken by the learned counsel for the relator is in this, respect untenable.
The views expressed by the learned Chief Justice, in deciding the case of The People v. Hills (35 N. Y., 449), upon which the relator seems to rely, were criticised by the court in the later case of The People v. Briggs and the court, per Church, Ch. J., referring to the former case, says:
“The judge case (The People v. Hills), intimated' that if the particular section in the act proposed to be amended had been referred to in the title, it would have been good, but I doubt whether that would have cured the defect. The constitution requires that the subject should be expressed. The title expressed no subject, but only contained a reference where the subject might be found. If the title of the act proposed to be amended had been inserted, it would have been free from the constitutional objection.”
Vide also in the Matter of the Metropolitan Gas-Light Company, 85 N. Y., 526, 529.
The title is not misleading, and the provisions of the present act include no- *180 matter not included in some one of the many sections of the consolidation •act. And I cannot conclude that it is within the purview of the constitutional prohibition. '
If the title of the act of 1885 he sufficiently specified within the rule laid down by the courts, I do not think that the act can be regarded as obnoxious to the constitutional prohibition under consideration, upon the further ground that the title fails to state the fact that the provisions of the consolidation act amended by it, also amend the act of 1880 (Chap. 269, Laws 1880), the general law regulating the review and correction of assessments throughout the state.
The language of the court of appeals in the case of The Matter of the Mayor, etc., of New York. (99 N. Y., 576), would seem to apply to the present case: “ The criticism is quite too rigid and narrow. It would lead to a condemnation which few titles would escape until they became cumbersome and awkward digests of the details of their enactment. * * * The most valuable test of such a title and the one which we have usually employed, is the inquiry whether the title was so framed as to be deceptive or misleading, and consummated the evil at which the constitutional prohibition was aimed. Matter of Lands in Flatbush, 60 N. Y., 398; Matter of Paul, 94 id., 497. Where one reading a proposed bill with the title in his mind comes upon provisions which take him by surprise or which he could not reasonably have anticipated, and so both citizen and legislator are misled and thrown off their guard, it is our duty to declare the condemnation of the fundamental law; but where, as in the present case, no such evil lurks in the title, and the provisions to decide may be easily and reasonably grouped within the scope and range of the general subject expressed, we ought not to destroy; the legislation assailed upon some nice and rigid criticism of forms of expression."
The error in this respect would lie in the title of the consolidation act and not in that purporting to amend it (Tingue v. Village of Portchester, 101 N. Y., 294, 302); and-though it is true that under the facts of the present case the unconstitutionality of the consolidation act in this respect would viliate the act of 1885,1 cannot concede that such a construction should be given to the constitutional prohibition as would produce such a result. Such a construction would conflict directly with the primary purposes of the prohibition.
The object of this provision of the constitution is twofold: First, to prevent a, combination of measures in local bills and secure their passage by a union of interests, commonly known as “ log rolling.” Second, to require an announcement of the subject of every such bill to prevent the fraudulent insertion of provisions upon subjects foreign to that indicated in the title (People ex rel. City of R. v. Briggs, 50 N. Y., 558). It was intended that the title should so express the subject of the bill that the attention of the legislature and the public might be at once directed to its general purport and tenor. But if, as in the case of the consolidation act—an act containing many hundred sections —and other composite acts, it were necessary that the title should contain a reference to each and every law in the statute book, modified, amended or affected in any way by its provisions, the multiplicity of details would obscure the expressed purpose. The title would not enlighten, it would confuse: it would not guide, it would completely puzzle. And the simplicity and directness necessary to secure the desired end would be wholly destroyed.
I therefore conclude that there is no force in the objection that the statute in question, chapter 811, Laws of 1685, is obnoxious to section 13, article 3, of the constitution of the state of Hew York;
Second. The relator claims, in the second place, that the statute in question (Laws of 1885, chapter 311) is obnoxious to the first section of the fourteenth amendment of the constitution of the United States.
The respondent, in answer to this contention, interposes a preliminary objection that a corporation is not a person within the purview of this amendment. and that in consequence the relator cannot claim the benefit of its restrictive provisions.
The magnitude and serious import of the question so raised cannot be overestimated, and its determination would of necessity require a careful and accurate investigation of the extent to wfiich the power of a state to charter private' corporations and to control those which it has created, has been limited and abridged by this amendment to the Federal constitution. But I am not *181 required to pass upon this question, for I cannot conclude that the statute under consideration (Laws of 1885, chapter 311) is obnoxious to the fourteenth amendment, even as to natural persons.
The first section of the fourteenth amendment reads as follows:
“ All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or propeity, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.”
It is in the last clause of this section, “ nor deny to any person within its jurisdiction the equal protection of the laws,” that the relator claims to find a sanction for his contention as to the unconstitutionality of the statute in •question.
The relator claims that by virtue of the provisions of chapter 311, Laws of 1885, the inhabitants of that portion of the territory of the state of New York known as New York county are denied the equal protection of the laws. And if it were within the legitimate scope of the fourteenth amendment to secure to each inhabitant of the state a right to resort to every court in the state upon the same terms with every other inhabitant—v ithout regard to arrangements establised by the legislature touching the territorial limits of the jurisdiction of the several courts of the state—the contention might be deemed to be a valid one. For under the statute in question it is true that while a person, an inhabitant of any other county in this state except New York, can complain to the supreme court, if his assessment for his proportion of the general burden of taxation be unequal or unfair when compared with the assessments placed upon the property of other inhabitants of that county equally benefitted, and is entitled upon such complaint to a hearing in the court, and to obtain a review by the court of the assessment upon this ground, a resident of the county <of New York similarly situated is denied access to the court and is unable to obtain a similar review by the court, and, in the case of an erroneous assess ■ ment, a like correction of the inequity.
But broad as is the language of the clause upon which the relator relies, it must be clearly borne in mind that under the decisions of the supreme federal tribunal, the fourteenth amendment to the United States constitution, while it does prohibit class legislation does not prohibit local or special legislation (Hayes v. Missouri, 120 U. S., 68; Barbier v. Connolly, 113 id., 27; Bowman v. Lewis, 11 Otto, 22; Walker v. Sauvinet, 92 U. S., 93). And the present case falls clearly within the principles laid down by the supreme court of the United States in the case of Bowman v. Lewis (cited).
The contention of the plaintiff in error in that case (Bowman v. Lewis) was in many respects identical with that of the relator in the present action. By the constitution and laws of Missouri an appeal lay to the supreme court of that state from any final judgment or decree of any circuit court, except those in the counties of St. Charles, Lincoln, Warren and St. Louis, and the city of St. Louis. For these counties a separate court of appeals was established, called the St. Louis court of appeals, and to this court was given exclusive jurisdiction of all appeals from and writs of error to the circuit courts of those counties and cities. From this court, the St. Louis court of appeals, an appeal lay to the supreme court only in cases where the amount in dispute, exclusive of costs, exceeded the sum of $2,500, and in certain other cases of special character which were duly enumerated. No appeal was given to the supreme court in a case like that of Bowman v. Lewis, arising in the «counties referred to or in the city of St. Louis, but a similar case arising in the «circuit court of any other county would have been appealable directly to the supreme court. The plaintiff in error contended that this feature of the judicial system of Missouri w«as obnoxious to the fourteenth amendment of the constitution of the United States, because it denied to suitors in the courts of St. Louis and in the counties named, the equal protection of the laws, in that it denied to them the right of appeal to the supreme court of Missouri in ■cases where it gave that right to suitors in the courts of the other counties of the state
The supreme court of the United States, in overruling this contention and affirming the constitutionality of this method of procedure, say (per Bradley, J): *182 “It (the fourteenth amendment) contemplates persons and classes of persons. It has not respect to local and municipal regulations that do not injuriously affect or discriminate between persons or classes of persons within the places or municipalities for which such regulations are made. The amendment could never have been intended to prevent a state from arranging and parceling out the jurisdiction of the several courts at its discretion. * * * It is the right of every state to establish such courts as it sees fit, and to prescribe their several juiisdictions as to territorial extent, subject-matter and amount, and the finality and effect of their decisions, provided it does not encroach upon the proper jurisdiction of the United States, and does not abridge the privileges and immunities of citizens of the United States, and does not deprive any person of his rights without due process of law, nor deny to any person the equal protection of the laws, including the equal right to resort to the appropriate courts for redress. The last restriction, as to the equal protection of the laws, is not violated by any diversity in the jurisdiction of the several courts as to subject-matter, amount or finality of decision, if all persons within the territorial limits of their respective jurisdictions have an equal right, in like cases and under like circumstances, to resort to them for redress. Each state has the right to make political subdivisions of its territory for municipal purposes, and to regulate their local government. As respects the administration of justice, it may establish one system of courts for cities and another for rural districts; one system for one portion of its territory and another system for another portion. Convenience, if not necessity, often requires this to be done, and it would seriously interfere with the power of a state to regulate its internal affairs, to deny to it this right. We think it is not denied or taken away by anything in the constitution of the United States, including the amendments thereto.”
In view of the construction so given to this amendment by its ultimate interpreter, I am constrained to find that the provisions and restrictions of the fourteenth amendment are not applicable to a case like the one at bar. All persons within the county of Now York are treated alike, under the circumstances indicated, both in the privileges conferred and the restrictions imposed by the statute, and such legislation is not repugnant to the amendment.
It must be borne in mind that in the county of New York, under the provisions of the statutes now in force, a person aggrieved by the unequal valuation of his property for the purposes of taxation is not wholly without remedy. He enjoys the right to appeal from the act of the deputy tax commissioners in fixing a valuation upon his property to the tax commissioners as a board of review, and upon such an appeal to obtain a review of the assessment and its correction, if it be shown to be inequitable.
I therefore conclude that the statute in question (Laws 1885, chap. 811) is constitutional, and that the relator has not the right in this proceeding to introduce evidence to establish the alleged unequal valuation of its property as compared with the valuation of other properties on the same roll for the same year.