## GILROY *v.* SMITH.

### (*Supreme Court, Special Term, New York County.* May 8, 1889.)

1. OFFICE AND OFFICER—APPOINTMENT AND TENURE.

The consolidation act of New York city, § 106, which went into effect April 1, 1883, provided that the terms of all officers, whensoever actually appointed, should commence on the 1st day of May in the year in which their predecessors' terms · should expire, but that certain officers, including the commissioner of public works, to be appointed on the expiration of the terms of the then incumbents, in December, 1884, should hold their offices until four years from the 1st day of May succeeding such month. Under said act a commissioner of public works was appointed in December, 1884, to hold for four years from May 1, 1885. It was contended by said commissioner that under the charter as it existed prior to the consolidation act the term of the commissioner did not expire in December, but on May 1, 1883, and was therefore not filled, and that the second term thereafter, which he was holding, did not expire until May 1, 1891. *Held*, that if the legislature erred in treating the term of the commissioner as expiring in December, its intention that the next appointment thereafter should be for a term beginning in December, 1884, and ending May 1, 1889, was still apparent.

2. SAME.

The city charter passed April 30, 1873, provided in section 25 that the mayor should within 20 days after the passage thereof nominate the successors of persons whose terms were ended by its passage, excepting the commissioner of public works and some other officers, who were expressly allowed to continue in office for the residue of their terms, which would expire in the following December, when he was permitted to appoint their successors for terms of four years It further provided that "every head of department and person in this section named, except as herein otherwise provided," should hold their offices for six years, or until their successors should be appointed. The terms of all except "those first appointed" were to commence on May 1st. As to those first appointed it was provided that their terms should commence on the expiration of the terms of the then incumbents, "as hereinafter provided," and continue until the "1st day of May in the year in which it is herein provided that their respective terms should expire." Section 117 contained a general provision ending the terms of all appointed officials on the 1st day of May, 1873, excepting the commissioner and some other officers. *Held*, that the charter made no change in the time at which the term of said commissioner should expire, which still continued to be in December, as before the passage of the charter.

At chambers.

Special proceeding by Thomas F. Gilroy against D. Lowber Smith, commissioner of public works, to require him to surrender the books and papers in his custody as such officer to the plaintiff, who had been appointed his successor.

*W. Bourke Cockran, James C. Carter,* and *William H. Clark,* for plaintiff.
*Noah Davis, Robert Sewell, N. J. Waterbury, Calvin Frost,* and *Augustus Hutchings,* for defendant.

BARRETT, J.   Upon the 2d day of the present month the complainant, Gilroy, was appointed by Mayor Grant to the office of commissioner of public works for the term of four years from the 1st day of May, 1889.   With this appointment Mr. Gilroy comes before me, and complains that the respondent, Smith, who previously held the same office, and whose term, as it is claimed, expired on the 1st day of May, has refused to deliver over to him the books and papers appertaining to the office.   Upon this complaint Mr. Gilroy, under the provisions of the Revised Statute, entitled "Proceedings to compel the delivery of books and papers by public officers to their successors," (1 Rev. St., Bank's 7th Ed. p. 375,) asks for a warrant to so compel such delivery.   Mr. Gilroy presents a clear and perfect title under the plain letter of section 106 of the consolidation act.   The relevant part of that section reads as follows: "The terms of office of all such heads of departments and persons, whensoever actually appointed, shall commence on the 1st day of May in the year in which the terms of office of their predecessors expire; but the comptroller, corporation counsel, and commissioner of public works, to be appointed on the expiration of the terms of office of the present incumbents in December, 1884, shall hold their offices until four years from the 1st day of May succeeding such month."   Under this provision a commissioner of public works was appointed in December, 1884.   He was so appointed for the precise term specified in the act, namely, for four years from the 1st day of May succeeding December, 1884, that is, for four years from May 1, 1885.   Section 53 of the act commands that every person appointed to any office under the city shall receive a certificate of appointment designating the term for which such person has been appointed.   This was complied with, and the specified term was duly embodied in the certificate.   Thus the act was fully executed.   The appointment was made under its express direction, and for the term explicitly designated.   That term expired on the first day of the present month, and it would seem to be demonstrated that Mr. Smith's unexpired term then ended, and Mr. Gilroy's new term at once commenced.   Mr. Smith seeks to break the force of this statutory sequence by an attack upon the law itself.   He says, in effect, that the legislature erred when speaking (in section 106, *supra*) of the comptroller, corporation counsel, and commissioner of public works as officers "to be appointed on the expiration of the terms of office of the present incumbents in December, 1884."   This, he contends, was a legislative mistake.   The terms of office of the then incumbents were not to expire in December, 1884.   There was no corporation counsel or commissioner of public works to be appointed in December, 1884.   *Ergo,* the appointment under the act was void, the new term inaugurated by the act was void, and the line of commissioners holding since then in precise compliance with the act were simply officers *de facto* under color of title.   Looking for commissioners *de jure,* he goes behind this provision of the consolidation act, (thus ignored as invalid,) and in his affidavit avers that, under the charter of 1873, the terms of office of the corporation counsel and commissioner of public works really expired on the 1st day of May, 1883; that the next term (to which no one was appointed) expired May 1, 1887, and that the present term (to which no one was appointed until December 31, 1888, when he, Smith, was appointed to what was left of it) expires May 1, 1891.

The question presented by this somewhat grotesque reasoning is whether

786 NEW YORK SUPPLEMENT, vol. 5. [Sup. Ct.

the right of the complainant is free from reasonable doubt. If it is, he is, as was said by LEONARD, J., in *People* v. *Allen*, 42 Barb. 209, "absolutely entitled to the assistance which the statute contemplates." The same rule has been laid down in all the later cases. *Re North* v. *Cary*, 4 Thomp. & C. 358; *People* v. *Allen*, 51 How. Pr. 97. Indeed, it seems strange that this rule should ever have been questioned. For, as was said by Judge LEONARD in the *Allen Case:* "If the justice could be excluded from taking cognizance of the right of an applicant for the possession of books and papers in every case where a plausible argument could be raised, * * * there would be few cases where relief could be afforded, and the statute would virtually become obsolete, and of no effect." And, as was also said by Judge INGALLS in the case of *North* v. *Cary*, above cited: "It is quite obvious that the legislature never intended that such remedy should be defeated, and an officer deprived of the possession of the books and papers of an office to which he has been regularly elected or appointed, simply because another party claims to retain the same upon grounds which are frivolous, or creating no reasonable doubt in regard to the right of such officer. Such a construction would render the statute meaningless and useless." What doubt, then, reasonable or otherwise, has been thrown upon Mr. Gilroy's appointment? It is, as we have seen, in strict accordance with the express terms of the statute. If within the letter, what reason is there for supposing that it is not within the intent? None has been suggested by the respondent. What right have we to say—if the question were in doubt in 1882—that the legislature erred in substantially declaring that the existing terms would expire in December, 1884? The legislature certainly had power to inaugurate a new term, to specify the date of its commencement, and to provide for its duration. The charter of a public corporation is always subject to legislative control, (*Demarest* v. *Mayor*, 74 N. Y. 161,) and the consolidation act constitutionally embraces the charter of 1873, together with such amendments or alterations as the legislature saw fit to enact. For this purpose its title is sufficient. See *People* v. *Coleman*, (opinion of Ex-Judge VAN VORST,) affirmed by the general term on this opinion January 28, 1889, reported in 4 N. Y. Supp. 417. The consolidation act was, in fact, an original enactment, not a mere compilation; and it has been amended in essential particulars, without question, every year since its passage. Thus, year by year, it continues to "declare" the law applicable to the municipality, and it does so lawfully.

There are, it seems to me, two conclusive answers to Mr. Smith's objection to our reading the consolidation act as it reads: *First.* Even if the declaration as to the time when the terms of the then present incumbents are to expire be treated as a legislative mistake, yet the enactment as to the new term is entirely valid. Leave out the words "in December, 1884," as controlling the expiration of the existing terms, and still what is the legislative intent? Is it not plainly in accordance with the letter of the statute, namely, that the next appointment to be made after the passage of the act should be for a term commencing in December, 1884, and ending May 1, 1889? The consolidation act was passed in 1882. It went into effect April 1, 1883, (Laws 1883, c. 276, § 35.) At the time it was passed, and also at the time it went into effect, Mr. Hubert O. Thompson was the incumbent of this office under an appointment legally terminable (according to Mr. Smith's contention) on the 1st day of May, 1883. It is conceded that if the provision under consideration had read, "the commissioner of public works to be appointed on the expiration (in May, 1883) of the term of office of the present incumbent shall hold his office until the 1st day of May, 1889," there would have been no question here. What greater question would there have been if the supposed date of the expiration of the then existing term had been omitted altogether? The act would then have read: "The commissioner to be appointed on the expiration of the term of office of the present incumbent shall hold his office until four years from

the 1st day of May, 1885." In other words, however the section be viewed, grammatically, according to the letter, or according to the intent, the legislature have simply enacted that the next term shall be for four years from the May succeeding December, 1884. *Second.* But it is quite clear that Mr. Smith's contention as to the expiration of the preceding term is erroneous, and that the legislature made no mistake with respect to the date of the falling in of Mr. Thompson's term. The fallacy of Mr. Smith's argument on this head lies in the false premise that prior to the consolidation act this office was included in those regulated (as to consecutive periods terminable on the 1st of May) by the charter of 1873. A careful examination of this charter will show that the office in question, and some others, are expressly excepted from these regulations; that the terms of these excepted offices were thereby left to run as before, from December to December, and that the intention which governed with regard to the great body of officers enumerated in section 117 of that charter had no application to the corporation counsel or to the commissioner of public works. The exception to which I refer will be found in section 25, (see Laws 1873, p. 490.) To understand the scope of this exception we must look at the general purpose with regard to existing terms. This charter was passed on the 30th of April. It was to take effect immediately, and one of its effects was, in substance, to legislate out of office the very next day, May 1st, every appointed official in the city, (section 117,) with the exception of the few enumerated in section 25, (among whom were the corporation counsel and commissioner of public works.) The mayor was required, within 20 days after the passage of the charter, to nominate all the persons who were to supply the places of the officials thus legislated out of office. But the excepted officers, including the corporation counsel and commissioner of public works, are expressly permitted to enjoy the remainder of their term. Section 25. As to these the mayor had no power of appointment until the expiration of their existing terms, and then he was required to appoint for a given period,—in the case under consideration, for four years. Section 70. Unless something to the contrary can be found in the act, that four years must necessarily run from the date of the expiration of the existing term. I have searched the act carefully, and can find no provision to the contrary. There is such a provision as to the general body of offices, but that provision is everywhere treated as inapplicable to the excepted class. Thus, in section 25, we find the following provision: "Every head of department and person in this section named, except as herein otherwise provided, shall hold his office for the term of six years, and in each case until a person is duly appointed in his place. The terms of office of all such heads of departments, and persons other than those first appointed, shall commence on the 1st day of May." Now, who are the "such heads of departments and persons" contemplated by the last phrase? Plainly those referred to in the preceding phrase, namely, "every head of department and person in this section named, except as herein otherwise provided." And the commissioner of public works is one of those so excepted. It was recognized that the first appointment of the general body of officials would necessarily be later than the 1st day of May. It would be impossible, under an act which took effect on the 30th of April, to fill the whole body of officers the next day. Naturally, and for the obvious reason suggested, the provision as to the commencement of terms on the 1st day of May excluded "those first appointed." The legislature understood that the terms of those first appointed could only commence upon their confirmation after the 1st day of May, while the terms of their successors could commence without difficulty on the 1st day of May some years later. The terms of successors of the excepted officers, however, could not well commence on the 1st day of a subsequent May, without an interregnum from the preceding December.

The only other provision which is cited as affording color for the opposite view is this: "The persons first appointed shall take office on the expiration

of the terms of office of the present incumbents, as hereinafter provided, and shall hold their offices until the 1st day of May in the year in which it is herein provided that their respective terms shall expire." It is contended that the excepted class is within this provision, but this contention is based upon a superficial view of its phraseology. It entirely overlooks the expression "as hereinafter provided." This expression clearly qualifies what precedes. Now, what is hereinafter provided? Why, that the terms of office of the entire body of officials (except those to whom we have referred) shall expire on the 1st day of May, 1873. Thus the meaning is perfectly apparent. The "persons first appointed" are to take office on the expiration of the terms of those present incumbents who are "hereinafter" (section 117) legislated out of office on the 1st of May, 1873. But clearly such "persons first appointed" do not embrace those present incumbents, who are not hereinafter legislated out of office on the 1st day of May, 1873, but who, on the contrary, are hereinbefore retained in office until long after that date, namely, until the expiration of their terms in some future December. I really cannot conceive how any doubt ever arose on this head. It would have been a strange incongruity to imply that a term should run on until December, should in future be filled for four years, and yet that when first filled it should terminate on the 1st day of May preceding the expiration of the four years. Certainly, it would require very clear language (such, indeed, as we find in the consolidation act, but nowhere in the charter of 1873) to justify such a construction. In the charter of 1873 marked words of exception, indicating the opposite intent, are employed in every relevant section, and in every material paragraph of every such section. What the legislature undoubtedly intended was that the bulk of official terms should fall in on the 1st day of May, but that the few excepted terms should run on as before. That view of the matter was acted upon periodically—and without question—by the appointing power, until the passage of the consolidation act. Then the lack of unity in the preceding scheme was recognized, and the legislature determined to bring this office, as well as that of the corporation counsel, into the general system with regard to the commencement and ending of terms. It did not, however, seek to do this at the expense of the next incumbent by making his term fall in on the 1st day of May preceding his last December. It was deemed fairer to extend the term to the May succeeding such last December; in other words, to bring about the desired uniformity by means of a short addition to the first term thereafter, rather than by contraction. It may be contended that, even if this view of the charter of 1873 be correct, it only obviates the difficulty with respect to the May terms, and that still the legislature erred in not declaring that Mr. Thompson's term was to expire in December, 1883. The simple answer to this is that it was for the legislature to decide upon the effect of a holding over after the expiration of a given term. It was competent for that body to declare that a person receiving an appointment pending such holding over should take a full term from the date of his appointment. It could so enact directly or by necessary implication. Now, such was plainly the effect of the enactment in question. Mr. Thompson was appointed on the 10th day of December, 1880. He was so appointed for four years. His predecessor was then holding over after the expiration (in December, 1879) of the preceding term. Whether Mr. Thompson took for four years from December, 1879, or for four years from the date of his appointment, depended upon the legislative intent, as expressed in the charter of 1873. What, then, was the provision in the consolidation act but a legislative construction of that intent? The legislature is presumed to have acted with knowledge of contemporaneous facts, and with reference to the practical construction given to the charter of 1873 by the various officials who had made appointments under it. The law-making body is presumed, therefore, to have known that Mr. Thompson was appointed on the 10th day of December, 1880, for four years, and that such appointment was made long

after the expiration of the preceding statutory term. It was competent for the legislature to place its construction upon the language of the charter of 1873, and to declare that Mr. Thompson's existing appointment was for a full term from and after its date, (December 10, 1880,) and not for the balance of an unexpired term commencing in December, 1879. In my judgment he took for such a full term without resort to this legislative construction, but with it the question does not admit of debate.

In *People* v. *McClave*, 99 N. Y. 83, 1 N. E. Rep. 235, the principle was finally established as to the non-excepted class, that a holding over encroached upon a consecutive term. That conclusion was arrived at because of the legislative intention (limited, as we have seen, to that class) expressed by implication in the charter of 1873, to inaugurate a system of consecutive terms commencing and ending in May. That view had no application to the excepted class, at that time expressly excluded from the system. Even as to the non-excepted or general class, however, the result was reached, as Judge ANDREWS observed, with hesitation, and the acknowledgment that the question was left "in great perplexity by the lack of precision in the wording of the act and the difficulty of reconciling apparently conflicting provisions." And the learned judge concluded his opinion by a reference to the consolidation act, which, as he observed, "removed all doubt upon the point therein involved in future cases," and which, he thought, was entitled to some force as a legislative construction of the act of 1873. If the consolidation act was entitled to some force there as a legislative construction of the act of 1873, it is entitled to greater force here. There the implication did not spring, as it does here, from unambiguous words necessarily excluding any other construction. When the legislature spoke of a commissioner of public works "to be appointed on the expiration of the term of office of the present incumbent in December, 1884," it necessarily declared that Mr. Thompson's appointment in December, 1880, was for four years from that date, and that such was its construction of the charter of 1873. Either that, or we must attribute to the legislature an attempt—of doubtful constitutionality—to extend Mr. Thompson's term from December, 1879, to December, 1884. No such intent should be attributed to the law-making power when a construction can be given to its language entirely consistent with the constitution, and simply declaratory of the term conferred by an appointment pending a holding over. If I am right in the opinion that the charter of 1873 was, in this respect, free from doubt, the provision of the consolidation act under consideration is beyond cavil. If, on the other hand, it was not free from doubt, but involved even as perplexing a question as that which troubled the court in the *McClave Case*, the legislative construction set that question at rest. Whether, then, the provision in question be treated as an independent enactment or as a legislative construction of the previous enactment, it is equally controlling upon the commencement and duration of the new term. What right have we, under such circumstances, gratuitously to impute a stupid blunder to the legislative body, especially when, as we have seen, the letter of the statute is in harmony with the spirit, and together they tend to the production of certainty and the avoidance of confusion? Looking at the question from every point of view, there does not seem to be the slightest doubt that the legislature acted advisedly in inserting "December, 1884," as the date of the expiration of Mr. Thompson's term; and that it was thoroughly understood that the next term should then commence and should terminate on the 1st day of May, 1889.

The precise question was actually adjudicated in *People* v. *Lacombe*, 34 Hun, 402, affirmed 99 N. Y. 43, 1 N. E. Rep. 599. I have examined the judgment record in that case, and find that the judgment explicitly provides that Mr. Lacombe's term of office shall run to and terminate upon May 1, 1889. The court, at general term, observed that "the defendant was the incumbent of that office, (corporation counsel,) holding by an appointment for a term

which expired on the 10th day of December, 1884." And again: "The only lawful appointment to the office of corporation counsel that has been made since the last day of December is that made by Mayor Grace on the 14th of January, instant." In the court of appeals Judge MILLER, referring to Mr. Lacombe's original appointment, observed, "said appointment terminated on the 10th of December, 1884." It is true that this present question was not then discussed, and the case was presented upon a theory which did not question the duration of the term. But it is strange—if there is anything whatever in the respondent's present claim—that such a litigation should have engrossed the attention of so many eminent counsel and judges without a suggestion as to the invalidity of the legal structure upon which it was based.

I have said more on this question than was necessary. I might well have contented myself by a simple reference to the law, and the expression, *ita lex scripta est.* In matters, however, of grave public importance, where the people are likely to suffer from rash contention, it is always well to endeavor to convince the reason, and, if possible, conclude the controversy. Whether this be the result in the case at bar or not, there can be no doubt as to Mr. Gilroy's right to the immediate possession of the office; nor that Mr. Smith's position is one of factious obstruction. It would be monstrous if a public officer, holding an appointment under the precise terms of a statute, should be held at arm's length by his predecessor until he establishes the validity of the statute under which he is so appointed. That would be a complete inversion of the principles which govern such cases, (*In re Bartlett,* 9 How. Pr. 414; *In re Baker,* 11 How. Pr. 418,) and would lead to endless confusion and great public injury. I am not unmindful of the considerations as to the character and limitations of the present proceeding, which were so impressively presented by Judge DAVIS. Resort, it is true, can only be had to this statute in a case which is free from reasonable doubt. The magistrate should always act under it with extreme caution. It should never be made an instrument for the oppression of one of the parties to an honest and doubtful contention. On the other hand, the magistrate should not hesitate, when the contention has no general foundation, but is put forward merely as a color to support a temporary usurpation. If, after the views here expressed, Mr. Smith is advised to continue the contest, he is, of course, at liberty to do so. But it must be by the regular and orderly procedure of a suit in the nature of a *quo warranto.* He cannot, by what I feel bound to characterize as a frivolous and unsubstantial pretense, force the lawful appointee into that legal attitude, and retain the office, with its books and papers, pending the processes of litigation. The application must therefore be granted, and the warrant issued.