LYNDA LEE WEAVER ET AL. *v.* PRINCE
GEORGE'S COUNTY, MARYLAND

[No. 589, September Term, 1976.]

*Decided December 8, 1976.*

The cause was argued before THOMPSON, MENCHINE and LOWE, JJ.

*Thomas P. Smith*, with whom were *Burt M. Kahn* and *Kaplan, Smith, Joseph, Greenwald & Laake* on the brief, and by *Louis H. Pohoryles*, with whom were *Pohoryles, Goldberg, Repetti & Harris* on the brief, for appellants and cross-appellees.

*Ellis J. Koch, Deputy County Attorney for Prince George's County*, and *Steven M. Gilbert, Associate County Attorney*, with whom were *James C. Chapin, County Attorney*, and *Richard S. Alper, Associate County Attorney* on the brief, for appellee and cross-appellant.

MENCHINE, J., delivered the opinion of the Court.

Lynda Lee Weaver and others [1] (Weaver) filed a bill of complaint against Prince George's County, Maryland (County), seeking a declaration that Chapter 925 of the Laws of Maryland 1976 (enabling act) and Section 75-5 through 75-13 of the Code of Public Local Laws of Prince George's County as amended by CB 77-1976 (County bill) are unconstitutional and void.

The enabling act authorized and empowered the governing body of Prince George's County to impose a local multifamily occupancy tax on rentals arising in certain multifamily dwelling units.

The County bill, pursuant to the power and authority thereby granted, imposed a monthly tax of 4% upon rents charged for the use and occupancy of such multifamily residential units.

After hearing, the chancellor passed the following order:

"ORDERED that Chapter 925 of the Laws of Maryland (1976) is declared a constitutional act of

---

1. Other complainants were: Michael H. Yourishin, George Marvin Taylor, Jr. and Phyllis J. Taylor, Steven Bergovoy and Nina Bergovoy, MHA Associates, a Maryland limited partnership; Dreyfuss Brothers, Inc., Harry A. Jessell and Hugh D. Little.

the Maryland legislature, and that County Bill 77-1976, as codified in Sections 75-5 through 75-13 of the Code of Public Local Laws of Prince George's County, Maryland (1963 Edition and 1967 Supplement), is declared a constitutional act and that the County Council had a reasonable basis for passing the legislation and that the legislation as passed is constitutional, valid and in full force and effect with the exception of the provisions of County Bill 77-1976, 75-6(e) 'This term shall not include quarter's allowance or similar military housing allowances' which sentence is declared as an *ultra vires* act on the part of the governing body of Prince George's County, and shall be deemed excluded from said Bill and declared void., and it is further,

ORDERED that the matter be, and the same hereby is, declared to be a Class Action, and the decision rendered herein shall be binding on all tenants living in apartments, owners and agents who own or manage said apartments and corporate officers of such corporate owners and agents within Prince George's County, Maryland, and it is further

ORDERED that the Plaintiffs shall pay the costs of these proceedings as taxed by the Clerk of the Court."

Weaver has appealed from the order declaring that the enabling act is constitutional in its entirety and that the County bill is constitutional and binding in its major aspect.

County has appealed from the order "declaring that the exclusion of military quarters allowance from the category of housing subsidy constituted an *ultra vires* act."

County, as appellee, argues alternatively:

1. That Weaver's claim to a declaratory judgment is foreclosed by the doctrine of collateral estoppel; or

2. The enabling act and County bill do not: (a) impair the obligation of contracts under United

States Constitution Article I, Section 10, Clause 1 [2] ; (b) violate the provisions of Article 15 of the Maryland Declaration of Rights.[3]

County, as appellant, argues that the County bill's provisions excluding quarters allowances to military personnel from the federal or state housing subsidy exemptions authorized by the ordinance were not *ultra vires*. (CB 77-1976 §§ 75-5, 75-6e, 75-7c) [4]

---

**2.** Article I, Section 10, Clause 1, United States Constitution reads in pertinent part as follows:

"Section 10.

*[Restrictions upon Powers of States]*

No State shall . . . pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts . . . ."

**3.** Article 15 of the Maryland Declaration of Rights in pertinent part reads as follows:

". . . that the General Assembly shall, by uniform rules, provide for the separate assessment, classification and sub-classification of land, improvements on land and personal property, as it may deem proper; and all taxes thereafter provided to be levied by the State for the support of the general State Government, and by the Counties and by the City of Baltimore for their respective purposes, shall be uniform within each class or sub-class of land, improvements on land and personal property which the respective taxing powers may have directed to be subjected to the tax levy; yet fines, duties or taxes may properly and justly be imposed, or laid with a political view for the good government and benefit of the community."

**4.** These sections in pertinent part read as follows:

*"MULTI-FAMILY OCCUPANCY TAX*

Sec. 75-5 Levy and Imposition of Tax

There is hereby levied and imposed, unless excepted by the provisions of this Act, a monthly tax in the amount of four percent (4%) upon rents charged for the use and occupancy of rental multi-family residential units.

Sec. 75-6 Definitions

For the purposes of this Act the following words have the meanings indicated: * * *

e. Housing Subsidy — Direct or indirect payments by the federal or state government, payable to either a tenant or to a landlord on behalf of a tenant where the amount is based on the tenant's income or ability to pay and used exclusively for the payment of rent. This term shall not include quarters allowances or similar military housing allowances.

Weaver, as appellant, argues:

1. That collateral estoppel did not arise out of the prior litigation, because such litigation lacked both identity of parties and identity of subject matter; and

2. That the statute and ordinance impaired the obligation of contracts in violation of United States Constitution Article I, Section 10, Clause 1 (see footnote 2, *supra*) in that (a) the obligations of tenants were increased and (b) the rights of landlords were enlarged.

3. That the statute and ordinance is violative of Article 15 of the Maryland Declaration of Rights (see footnote 3, *supra*).

The chancellor held that prior litigation created conditions whereby the doctrine of collateral estoppel in substantial measure barred constitutional attack upon the enabling act and the County bill by complainants in the subject case.

For reasons to be hereafter stated, we disagree and are compelled to reverse for error of law. In such circumstances this Court ordinarily would be required to remand to the Circuit Court for Prince George's County to permit that court to address the substantive constitutional issues. Counsel for all parties have, however, submitted the case to this Court for final adjudication and judgment upon the facts set forth in the record, pursuant to Maryland Rule 1075 c.[5] We shall, accordingly, pass upon all questions of fact and law arising in the case and enter final judgment thereon.

---

\* \* \*

Sec. 75-7 Exemptions
  The provisions of this Act shall not apply to:

\* \* \*

  c. Any rental dwelling unit with a multi-family residential unit:

\* \* \*

  (3) occupied by a family receiving a housing subsidy."

5. Maryland Rule 1075 c reads as follows:

  "*Upon Submission of Parties.*
  If a judgment or part of a judgment is reversed and the case remanded for a new trial, the parties may by agreement in writing

## Collateral Estoppel

The complainants in the subject case are: (1) tenants in multifamily residential units in Prince George's County, Maryland, including military personnel receiving quarters allowances lesser in amount than the rental charges for their rented premises; or (2) limited partnership owners of 428 rental multifamily residential units in Prince George's County, Maryland; or (3) management agents for owners of rental multifamily residential units in Prince George's County; or (4) officers of corporate owners or agents of owners of rental multifamily residential units in Prince George's County.

The action was instituted as a class action under Maryland Rule 209.[6] Pursuant to the provisions of § c of that Rule the chancellor required publication of notice of the

---

filed with the Clerk submit the case to this Court for final adjudication and judgment upon the facts set forth in the record. Upon such submission by the parties, this Court will pass upon all questions of fact and of law arising in the case and enter final judgment thereon."

**6.** Maryland Rule 209 reads as follows:

"RULE 209. CLASS ACTIONS . . . . . . . . GEN'L.

    a. WHEN ALLOWED.

    When there is a question of law or fact common to persons of a numerous class whose joinder is impracticable, one or more of them whose claims or defenses are representative of the claims or defenses of all and who will fairly and adequately protect the interests of all may sue or be sued on behalf of all.

    b. ELIMINATION OF REPRESENTATIVE CHARACTER.

    Except where a class action is maintained of right, the court may adjudicate and declare the non-representative character of the action and render judgment specifically determining that only the parties to the action are bound thereby.

    c. PROTECTIVE ORDERS — NOTICE.

    The court at any stage of the action may impose such terms as shall fairly and adequately protect the interests of the persons on whose behalf the action is brought or defended, including an order that notice be given in such manner as it may direct; (1) of the pendency of the action, (2) of a proposed settlement, (3) of rendition of judgment, (4) to come in and present claims, or (5) of any other proceedings in the action.

    d. COURT APPROVAL FOR COMPROMISE OR DISMISSAL.

    Except with the approval of the court, a class action shall not be compromised or dismissed. (Added September 15, 1961.)

pendency of the litigation in three Prince George's County newspapers of record as designated by § 1008 of the County Charter and required the posting of such notice upon the Court House door.

## The Prior Litigation

The litigation suggested as giving rise to the operation of the doctrine of collateral estoppel barring prosecution of the subject action is a cause entitled Landon Court Tenant Association and others [7] against Prince George's County, Maryland and the County Executive (Landon Court).

The prior litigation had sought a declaration that Chapter 897 of the Laws of Maryland 1975 (earlier enabling act) and CB 93-1975 (earlier County bill) were unconstitutional and void.

The constitutionality of the earlier enabling act and the earlier County bill was upheld by the chancellor. The complainants in Landon Court, having reserved the issues for consideration of the Court in Banc, Maryland Rule 510, were thereby foreclosed from further appeal after affirmance by the latter tribunal. Constitution of Maryland, Article IV, Section 22.

County argues that the final order of the Court in Banc in Landon Court declaring Ch. 897 of the Laws of Maryland 1975 and CB 93-1975 to be constitutional gave rise to collateral estoppel by judgment as to the enabling act and the County bill now at issue in the subject case.

In *Davis v. Frederick County,* 25 Md. App. 68, 334 A. 2d 165 (1975), we said at 74 [168]:

"In Maryland the doctrine of *res judicata,* or estoppel by judgment, consists of two branches, direct estoppel by judgment and collateral estoppel by judgment."

In either case the bar of the doctrine does not arise unless there is identity of subject matter and identity of parties in

---

7. Other complainants in the prior action were: Seven Springs Village Tenant Association, Stephen L. Palius, David Zeitchik, Douglas Caplan and Poretsky Management, Inc.

prior litigation concluded on its merits in a court of competent jurisdiction. *DeMaio v. Lumbermen's Mutual*, 247 Md. 30, 34, 230 A. 2d 279, 281 (1967).

## Identity of Subject Matter

The declaration in Landon Court sustained the constitutionality of the earlier enabling act and the earlier County bill. A comparison of that statute and that ordinance with the enabling act (Ch. 925 of the Laws of Maryland 1976) and the County Bill (CB 77-1976) that are attacked in the subject proceedings demonstrates the absence of an identity of subject matter in the subject litigation.

## Differences in the Enabling Act

The legislative authority to Prince George's County conferred by the subject enabling act granted the following *entirely new rights* to the County:

1. The right to provide that "the operator or owner of a multifamily residential unit shall . . . be personally liable for the remittance of all taxes due at intervals as set by the governing body"; (Ch. 925 § (c)(1))

2. The right to provide that "the operator or owner of a multifamily residential unit . . . shall have the same right in respect to collecting the tax from the lessee or in respect to non-payment of the tax by the lessee, as if the tax were a part of the rental fee charged and payable when the same is due"; (Ch. 925 § (c)(2))

3. The right to provide "for the payment of reasonable costs, in such amounts and in a manner as set by the governing body, to the owner or operator of a multifamily residential unit for the collection and remittance of this tax"; (Ch. 925 § (c)(4))

4. The right to provide "for enforcement or collection of this tax against the landlord or the tenant at law or in equity"; (Ch. 925 § (c)(7))

5. The right to provide "for the Director of Finance . . . to collect the tax . . . and to make, adopt and amend such rules and regulations as are reasonably necessary and proper to fully collect this tax."

Other differences, minor in character, related, in sum, to changes in the amounts of money giving rise to a tenant's liability for or exemption from the authorized tax.

### Differences in the County Bills

The subject County bill enacted by Prince George's County to implement the subject enabling act made the following *entirely new changes in the law*:

1. Imposed personal liability upon landlord for the tax collected or to be collected (CB 77-1976-8 b, c, d), but holds harmless any landlord who acted in good faith to collect the tax, (CB 77-1976 § 75-8 e) and establishes standards for determination of "good faith" (CB 77-1976 § 75-6 c).

2. Defined housing subsidy to exclude quarters allowance to military personnel (CB 77-1976 § 75-6 e).

3. Required detailed monthly reports by landlord to Director of Finance (CB 77-1976 § 75-8 h).

4. Authorized inspection of landlords' records at County's expense (CB 77-1976 § 75-8 k).

5. Imposed a civil penalty upon landlord for refusal to collect tax (CB 77-1976 § 75-9 b).

6. Allowed landlord a credit from collected rent to compensate for cost of collection and remittance (CB 77-1976 § 75-10 a).

7. Provided procedures to permit landlord or tenant to obtain refunds for taxes "erroneously or mistakenly paid." (CB 77-1976 § 75-11).

8. Empowered Director of Finance to make rules and regulations. (CB 77-1976 § 75-12).

Other new provisions of lesser substantive significance included:

(a) Elimination of exemption previously allowed to persons under the age of eighteen years (CB 77-1976 § 75-6 d).

(b) Elimination of particular reference to benefits derived from Federal Civil Service in definition of gross income. (CB 77-1976 § 75-6 d).

(c) Exemption of all persons who are permanently and totally disabled. (CB 77-1976 § 75-6 h).

(d) Inclusion of single recorded condominium units in definition of single family residence. (CB 77-1976 § 75-6 k).

(e) Definition of "tenant." (CB 77-1976 § 75-61).

(f) Decrease in age of entitlement to and increase in amount of income giving rise to exemptions. (CB 77-1976 § 75-7 c (5)).

(g) Change of collection agent for the tax from the County Executive to the Director of Finance. (CB 77-1976 § 75-8 a).

(h) Providing detailed procedures for determination of a tenant's right to exemption. (CB 77-1976, § 75-8 g).

In *Commissioner v. Sunnen,* 333 U. S. 591, 599-601, 92 L. Ed. 898, 907, 68 S. Ct. 715, 720-21 (1948), it was said:

"And so where two cases involve income taxes in different taxable years, collateral estoppel must be used with its limitations carefully in mind so as to avoid injustice. It must be confined to situations where the matter raised in the second suit is identical in all respects with that decided in the first proceeding and where the controlling facts and applicable legal rules remain unchanged. Tait v. Western Maryland R. Co. (US) supra. If the legal matters determined in the earlier case differ from those raised in the second case, collateral estoppel has no bearing on the situation. See Travelers Ins. Co. v. Commissioner (CCA 2d) 161 F2d 93. And where the situation is vitally altered between the time of the first judgment and the second, the prior determination is not conclusive. See State Farm Mut. Auto. Ins. Co. v. Duel, 324 US 154, 162, 89 L ed 812, 818, 65 S Ct 573; 2 Freeman, Judgments 5th ed

(1925) § 713. As demonstrated by Blair v. Commissioner, 300 US 5, 9, 81 L ed 465, 469, 57 S Ct 330, a judicial declaration intervening between the two proceedings may so change the legal atmosphere as to render the rule of collateral estoppel inapplicable. But the intervening decision need not necessarily be that of a state court, as it was in the Blair Case. While such a state court decision may be considered as having changed the facts for federal tax litigation purposes, a modification or growth in legal principles as enunciated in intervening decisions of this Court may also effect a significant change in the situation. Tax inequality can result as readily from neglecting legal modulations by this Court as from disregarding factual changes wrought by state courts. In either event, the supervening decision cannot justly be ignored by blind reliance upon the rule of collateral estoppel. Henricksen v. Seward (CCA 9th Wash) 135 F2d 986, 988, 989, 150 ALR 1; Pelham Hall Co. v. Hassett (CCA 1st Mass) 147 F2d 63, 68, 69; Commissioner v. Arundel-Brooks Concrete Corp. (CCA 4th) 152 F2d 225, 227, 162 ALR 1200; Corrigan v. Commissioner (CCA 6th) 155 F2d 164, 165; and see West Coast L. Ins. Co. v. Merced Irrig. Dist. (CCA 9th Cal) 114 F2d 654, 661, 662, 44 Am Bankr NS 91; contra: Commissioner v. Western U. Teleg. Co. (CCA 2d) 141 F2d 774, 778. It naturally follows that an interposed alteration in the pertinent statutory provisions or Treasury regulations can make the use of that rule unwarranted. Tait v. Western Maryland R. Co. supra (289 US 625, 77 L ed 1408, 53 S Ct 706)."

See also Annotation 162 ALR 1204, et seq., particularly 1210-14; Annotation 150 ALR 5, et seq. Compare State Tax Commission v. Bullis School, 218 Md. 558, 147 A. 2d 849 (1959).

We regard the changes of substance and procedure effected by the subject enabling act and the subject County

bill to be so extensive in character as to cause the doctrine of collateral estoppel to be inapplicable in the subject litigation. *State Tax Commission v. Bullis School, supra,* at 563 [852].

Weaver further suggests that because of the absence of *actual* identity of parties, coupled with the circumstance that in Landon Court no notice was given to "fairly and adequately protect the interests of the persons on whose behalf the action [was] brought" (Rule 209 c), the prior litigation did not bar the right to litigate the subject cause.

With respect to the requirement that the identity of parties must be shown, there can be no doubt that *actual identity* of parties is not a requisite in class actions. In *Hansberry v. Lee,* 311 U. S. 32, 40-41, 61 S. Ct. 115, 117-18, 85 L. Ed. 22, 26 (1940), it was said:

> "It is a principle of general application in Anglo-American jurisprudence that one is not bound by a judgment in personam in a litigation in which he is not designated as a party or to which he has not been made a party by service of process. A judgment rendered in such circumstances is not entitled to the full faith and credit which the Constitution and statute of the United States prescribe and judicial action enforcing it against the person or property of the absent party is not that due process which the Fifth and Fourteenth Amendments require.
>
> "To these general rules there is a recognized exception that, to an extent not precisely defined by judicial opinion, the judgment in a 'class' or 'representative' suit, to which some members of the class are parties, may bind members of the class or those represented who were not made parties to it." (Citations omitted.)

Having previously concluded however, that the Landon Court litigation did not possess such identity of subject matter as would give rise to collateral estoppel, we do not reach the question whether the litigation involved the necessary identity of parties.

### The Constitutional Issues

The appellants in brief and argument in this Court have limited their constitutional attack as follows:

1. The 1976 Renters Tax is a property tax and not an excise tax [in violation of Article 15 of the Maryland Declaration of Rights].
2. The 1976 Renter's Tax Impairs the obligation of Contracts [in violation of Article I Section 10 of the Constitution of the United States].

### Article 15, Maryland Declaration of Rights

We do not regard the subject tax as a property tax.

In *Herman v. Baltimore*, 189 Md. 191, 55 A. 2d 491 (1947), it was said at 197-98 [495]:

> "A property tax is assessed on property by reason of ownership alone — or of the exercise of any one of substantially all the rights that constitute ownership. Excises have been defined as taxes laid upon the manufacture, sale or consumption of commodities within the country, upon licenses to pursue certain occupations, and upon corporate privileges. *Cooley, Constitutional Limitations*, 7th Ed., 680; 1 *Cooley, Law of Taxation*, 4th Ed., sec. 42; *Flint v. Stone Tracy Co.*, 220 U. S. 107, 31 S. Ct. 342, 349, 55 L. Ed. 389, Ann. Cas. 1912B, 1312; *Blaustein v. Levin*, 176 Md. 423, 4 A. 2d 861. Unless a third class of taxes, neither property nor excise, is recognized (which except perhaps with respect to federal taxes could serve no useful purpose), it seems convenient to regard excises as including all internal taxes that are not property taxes, *e.g.*, most of the new taxes introduced during this century. So regarded, excises include income taxes (*State v. Philadelphia, W. & B. R. Co.*, 45 Md. 361, 379, 24 Am. Rep. 511; *Oursler v. Tawes*, 178 Md. 471, 481, 485, 486, 13 A. 2d 763; *Brushaber v. Union Pac. R. Co.*, 240 U. S. 1, 17, 36 S. Ct. 236, 60 L. Ed.

493, L.R.A. 1917D, 414, Ann. Cas. 1917B, 713) and new taxes on the exercise of incidents of ownership short of mere ownership itself. The nature of a tax must be determined by its operation, rather than by any particular descriptive language which may have been applied to it. *Educational Films Corporation of America v. Ward,* 282 U. S. 379, 51 S. Ct. 170, 75 L. Ed. 400, 71 A. L. R. 1226."

A case quite similar factually was before the Court of Appeals of New York in *Ampco Printing-Adv. Off. Corp. v. City of New York,* 247 NYS2d 865, 14 N.Y.2d 11 (1964). In that case the Court dealt with a rental tax imposed by New York City under an enabling act authorizing "cities having a population of one million or more" to tax "persons occupying premises in such city for the purpose of carrying on or exercising any trade, business, vocation or commercial activity, measured by the rent paid for the use or occupancy of such premises." The local law provided, *inter alia,* that "every tenant of taxable premises is required, after June 1, 1963, to pay a tax of $2^{1}/_{2}\%$ of his base rent . . . ."

The decision made it plain that if the tax thus imposed was a tax on real estate the legislation and ordinance would be void under the New York State Constitution. The Court rejected the contention that the legislation imposed a tax on real estate, saying at 869-70 [21]:

"We are not persuaded by the plaintiff's contention that the economic impact of the tax is equivalent to a tax on real estate and that, therefore, it should be treated as coming within the constitutional limitation. After observing that ownership of real property includes the right to use it and to lease it for use by others, the plaintiffs conclude that a tax on the use of real estate is a tax on the real estate itself. Such reasoning has been repeatedly rejected. (See, e. g., Bromley v. McCaughn, 280 U.S. 124, 50 S.Ct. 46, 74 L.Ed. 226; New York ex rel. Cohn v. Graves, 300 U.S. 308, 314-315; 57 S. Ct. 466, 468-469; 81 L.Ed. 666; Hale v.

Iowa State Board of Assessment and Review, 302 U.S. 95, 107, 58 S.Ct. 102, 106, 82 L.Ed. 72.) Thus, Mr. Justice Stone stated in the Bromley case (280 U.S., at p. 136, 50 S.Ct., at p. 47, 74 L. Ed. 226):

'While taxes levied upon or collected from persons because of their general ownership of property may be taken to be direct, Pollock v. Farmers' Loan & Trust Co., 157 U.S. 429, 15 S.Ct. 673, 39 L.Ed. 759; Id., 158 U.S. 601, 15 S.Ct. 912, 39 L.Ed. 1108, this court has consistently held almost from the foundation of the government, that a *tax imposed upon a particular use of property or the exercise of a single power over property incidental to ownership, is an excise* which need not be apportioned, and it is enough for present purposes that this tax is of the latter class.' (Emphasis supplied.)"

We adopt the rationale of the New York Court of Appeals in *Ampco, supra,* and find that the tax here imposed is an excise tax and thus not proscribed by Article 15 of the Declaration of Rights. *See Reinhardt v. Anne Arundel Co.,* 31 Md. App. 355, 370, 356 A. 2d 917, 925 (1976).

The only case to the contrary we have found is *Florida Revenue Commission v. Maas Brothers, Inc.,* 226 S.2d 849 (D. Ct. of Appeal 1st Dist., Fla. 1969). We reject its rationale.

We regard *Anne Arundel County v. English,* 182 Md. 514, 35 A. 2d 135 (1943) to be inapposite. In *English* the Legislature imposed a fixed annual tax upon the owners of specific personalty (trailers) without regard to value. The Court of Appeals pointed out that the Legislature could not, by describing the legislation as a "use" tax alter its actual character, saying at 531 [143]:

"The legislative designation is entitled to much weight, but it is not controlling. It cannot be made an occupation or license tax by calling it so."

*United States Constitution, Article I,*
*Section 10, Clause 1*

The impairment of contracts contention is without merit. All leases, whether or not antecedent to a taxing statute, are subject to the State's power to tax. If the taxing statute is within that power there is no impairment of a contract. *Lake Superior Consolidated Iron Mines v. Lord,* 271 U. S. 577, 70 L. Ed. 1093, 46 S. Ct. 627 (1926); *Barwise v. Sheppard,* 299 U. S. 33, 81 L. Ed. 23, 57 S. Ct. 70 (1936).

### The Ultra Vires Declaration

The enabling act, authorizing passage of the taxing ordinance, required that there be incorporated within the latter an exemption, *inter alia,* to "a multifamily residential unit . . . occupied by a family receiving a housing subsidy." Ch. 925 § 75-4 d(3).

The County bill included a provision exempting facilities "occupied by a family receiving a housing subsidy" (CB 1976 § 75-7 c (3)) but included as well a definition of "housing subsidy" reading as follows:

> "Direct or indirect payments by the federal or state government, payable to either a tenant or to a landlord on behalf of a tenant where the amount is based on the tenant's income or ability to pay and used exclusively for the payment of rent. *This term shall not include quarters allowances or similar military housing allowances.*" (Emphasis added.) (CB 1976 § 75-6 e).

The issue, in short, involved determination whether the amount paid to military personnel for "off post" housing allowances is a housing subsidy. The chancellor declared that it was. We think it is not.

In *Perdue v. State Dept. of Assess. & T.,* 264 Md. 228, 286 A. 2d 165 (1972), it was said at 232-33 [167]:

> "It is fundamental that statutory tax exemptions are strictly construed in favor of the taxing

authority and if any real doubt exists as to the propriety of an exemption that doubt *must* be resolved in favor of the State. In other words, 'to doubt an exemption is to deny it.' *Pan Am. Sulphur v. State Dept.,* 251 Md. 620, 629, 248 A. 2d 354 (1968). . ."

We think that the words "housing subsidy" as used in the enabling act must be interpreted in the light of the circumstance that State and Federal housing subsidy programs are intended to benefit families of limited income or to effect housing rehabilitation, or both. *See* 42 USCA § 1401; Maryland Code Article 41, § 257K, 257L.

"Housing allowances" to military personnel vary widely in amount, depending upon the rank of the individual concerned from the lowest to the highest. Title 37 USCA § 403.

We think it plain that the Legislature did not intend that a multifamily unit occupied by a general officer or admiral in the Armed Forces whose basic pay exceeds $1200.00 monthly (Title 37 USCA § 203) should be exempt from payment of the tax.

Of course, military personnel whose income falls within the general exemption limitations provided by the ordinance would be entitled to the benefit accorded thereby.

Incorporation of the provisions of CB 1976 § 75 6 e within the County bill did not exceed the powers of the County Council and was not an *ultra vires* act.

*Declaration and order affirmed in part and reversed in part and case remanded for passage of an amended declaration and order consistent with this opinion.*

*Costs to be paid one-half by appellants and one-half by appellee.*