ALLAN R. WASHABAUGH *v.* DOROTHY M. WASHABAUGH

[No. 89, September Term, 1978.]

\* \* \*

HAZEL D. DANIEL T/A MARYLAND-VIRGINIA CARPETS *v.* STEELE'S CARPET SERVICE, INC.

[No. 90, September Term, 1978.]

*Decided July 13, 1979.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, ORTH, COLE and DAVIDSON, JJ.

*Melvin Hirshman* for appellant in No. 89. *Jeffrey B. Fisher,* with whom were *Fisher & Walcek* on the brief, for appellant in No. 90.

No briefs filed on behalf of appellees. *George E. Meng* argued for appellee in No. 89.

DIGGES, J., delivered the opinion of the Court.

Included within those provisions of the Maryland Constitution that together establish this State's judicial system is section 22 of Article IV, which in its entirety provides:

> Where any Term is held, or trial conducted by less than the whole number of said Circuit Judges, upon the decision or determination of any point, or question, by the Court, it shall be competent to the party, against whom the ruling or decision is made, upon motion, to have the point, or question reserved for the consideration of the three Judges of the Circuit, who shall constitute a court in banc for such purpose; and the motion for such reservation shall be entered of record, during the sitting, at which such decision may be made; and the several Circuit Courts shall regulate, by rules, the mode and manner of presenting such points, or questions to the Court in banc, and the decision of the said Court in banc shall be the effective decision in the premises, and conclusive, as against the party, at whose motion said points, or questions were reserved; but such decision in banc shall not preclude the right of Appeal, or writ of error to the adverse party, in those cases, civil or criminal, in which appeal, or writ of error to the Court of Appeals may be allowed by Law. The right of having questions reserved shall not, however, apply to trials of Appeals from judgments of the District Court, nor to criminal cases below the grade of felony, except when the punishment is confinement in the Penitentiary; and

> this Section shall be subject to such provisions as
> may hereafter be made by Law.

Our concern here with regard to section 22 is the contention now being made that this provision is unconstitutional under the equal protection clause of the fourteenth amendment to the federal constitution because the appellate opportunity it affords is not given to litigants in Baltimore City. Although the jurisdiction of this Court to pass upon this issue has been questioned, we find we are authorized to render a decision upon the matter, and do so by determining that the appeal procedure provided by section 22 does not violate any stricture imposed by the fourteenth amendment's equal protection provision.

Prior to our exposition of the factual circumstances that precipitated the litigation now before us, as well as our explanation of our reasons for finding that section 22 is in no way constitutionally infirm, we think it advisable to provide some background concerning the appellate tribunal that section 22 establishes. Originally proposed by convention delegate Richard H. Alvey, who was subsequently to serve with great distinction as a member of this Court initially as an associate judge and then later as chief judge, section 22 was incorporated as part of the Maryland Constitution of 1867 and reads today basically as it did when first adopted.[1] Although the reason for section 22's inclusion in the constitution is not altogether clear, it appears to have been, as its commonly recognized nickname of "the poor person's appeal" suggests, a response to a fear of the framers of the Constitution of that year that the distance to Annapolis and the concomitant delay and expense incident to prosecuting an appeal in the Court of Appeals would discourage or preclude many litigants from seeking justice by means of appellate review. *Cf. Roth v. House of Refuge,* 31 Md. 329, 333 (1869) (Alvey, J.).

---

[1]. In the general election of November 1978 the voters accepted, along with a number of other constitutional changes, an amended section 22. The newly adopted provision, which is quoted in the text, tracks the language of its predecessor article exactly except for the substitution of the words "District Court" for a reference to "Justices of the Peace" in the original, thereby reflecting recent judicial reorganization in Maryland that has resulted in the replacement of the latter by the former.

From the language of section 22 itself, the opinions of this State's appellate courts,[2] and Maryland Rules 510 and 761, the only state-wide rules now pertaining to appeals to a court in banc,[3] the following emerges as the course for pursuing

2. In the one hundred some odd years since its adoption, section 22 has been the subject of controversy before this Court and the Court of Special Appeals less than a dozen times. See Estep v. Estep, 285 Md. 416, 404 A. 2d 1040 (1979); Buck v. Folkers, 269 Md. 185, 304 A. 2d 826 (1973); State Roads Comm. v. Smith, 224 Md. 537, 168 A. 2d 705 (1961); Liquor Board v. Handelman, 212 Md. 152, 129 A. 2d 78 (1957); Medical Examiners v. Steward, 207 Md. 108, 113 A. 2d 426 (1955); Costigin v. Bond, 65 Md. 122, 3 A. 285 (1886); Shuey v. Stoner, 47 Md. 167 (1877); Faber v. Wolfe, 41 Md. App. 458, 397 A. 2d 270 (1979); Weaver v. Prince George's County, 34 Md. App. 189, 366 A. 2d 1048 (1976), aff'd, 281 Md. 349, 379 A. 2d 399 (1977); Dobson v. Mulcare, 26 Md. App. 699, 338 A. 2d 898, cert. denied, 276 Md. 741 (1975); Andresen v. State, 24 Md. App. 128, 331 A. 2d 78, cert. denied, 274 Md. 725 (1975), aff'd, 427 U. S. 463, 96 S. Ct. 2737, 49 L.Ed.2d 627 (1976).

3. Maryland Rule 510 provides:

a. *Disqualification of Judge — Removal — Appeal — Election.*

When at the trial of any action any party shall require a point or question decided by the court to be reserved for the consideration of the court *in banc*, and any of the judges of the said court shall be disqualified to sit in such action, then it shall be lawful for the party at whose instance the point or question shall be reserved, to elect to have such point or question decided by the remaining judge or judges who may be qualified to sit in such action, or to have the action removed to a court of a different circuit for a decision or to appeal to the appropriate appellate court. If such party shall fail to file such election in writing within thirty days after the announcement of such disqualification, or within thirty days after the trial of the action, in case such announcement shall have been made before the trial, then such point or question shall be decided by the remaining judge or judges, who may be qualified to sit. Provided, that every point or question reserved upon a motion for a new trial shall be decided by the remaining judge or judges who may be so qualified.

b. *Reservation by Exceptions — Signature of Judge — Appeal.*

A point or question reserved for the court *in banc* shall be taken by means of exceptions, to be reduced to writing, and signed by the judge before whom the action may be tried, and so framed that the point or question may be fully presented as to both law and fact in case the action shall be transmitted to the appropriate appellate court instead of being heard by the court *in banc.*

c. *Removal — Action to Remain in Court to Which Removed.*

When an action shall be removed to another court upon a point or question reserved for the court *in banc,* as herein provided, the action shall remain in the said court for trial as if the same had originated therein.

d. *Not Applicable to Baltimore City.*

This Rule does not apply to Baltimore City. This rule also applies to appeals to the court in banc in criminal causes in which such an appeal is allowed. Md. Rule 761.

an in banc appeal. If, at a trial conducted by less than all the circuit judges who are regularly authorized to sit in the Maryland judicial circuit where the proceedings are held,[4] a decision on any point or question is rendered against a party, that litigant, when it is constitutionally permitted, may reserve the question or point for "the three Judges of the Circuit," [5] who "constitute a court in banc." Md. Const., Art. IV, § 22. This "reservation" must be entered upon the record during the "sitting" of the circuit court at which the questioned decision was made, *id.,* the term "sitting" having been interpreted by this Court as being the day during which

---

Although section 22 declares that "the several Circuit Courts shall regulate, by rules, the mode and manner of presenting such points, or questions to the Court in banc," any rule made by a circuit court to govern appeals to the court in banc would be subject to this Court's constitutionally prescribed power to make rules governing practice and procedure in the courts of this State. Md. Const., Art. IV, § 18 (A); *see* Bastian v. Watkins, Clerk, 230 Md. 325, 331-32, 187 A. 2d 304, 307-08 (1963). See also Md. Rule 1 f.

4. For the aid of the reader, we set forth pertinent parts of the following constitutional provisions:

Section 19. State divided into judicial circuits.

The State shall be divided into eight Judicial Circuits, in manner following, viz: The Counties of Worcester, Wicomico, Somerset, and Dorchester, shall constitute the First Circuit; the Counties of Caroline, Talbot, Queen Anne's, Kent and Cecil, the Second; the Counties of Baltimore and Harford, the Third; the Counties of Allegany, Garrett, and Washington, the Fourth; the Counties of Carroll, Howard and Anne Arundel, the Fifth; the Counties of Montgomery and Frederick, the Sixth; the Counties of Prince George's, Charles, Calvert, and St. Mary's, the Seventh; and Baltimore City, the Eighth.

Section 20. Court to be held in each county . . . .

A Court shall be held in each County of the State to be styled the Circuit Court for the County, in which it may be held.

\* \* \*

Section 21. Number of judges; residence requirements . . . .

(a) Subject to the provisions of subsection (b) the General Assembly shall determine by law the number of judges of the circuit court in each county and circuit. These judges shall be selected in accordance with Sections 3 and 5 of this Article.

(b) There shall be at least four circuit court judges resident in each circuit, and at least one circuit court judge shall be resident in each county. There shall be at least two such judges resident in Anne Arundel County, at least three resident in Baltimore County, at least four resident in Prince George's County, and at least five resident in Montgomery County. [Md. Const., Art. IV, §§ 19-20, 21 (a)-(b).]

5. The meaning of the phrase "the three Judges of the Circuit," will be discussed more fully *infra.*

the determination is rendered.[6] *Costigin v. Bond,* 65 Md. 122, 124, 3 A. 285, 285 (1886). Although the proceeding before a court in banc tends to be informal, the case usually being submitted on the record without filing formal briefs or record extracts as is necessitated in this Court and in the Court of Special Appeals by the Maryland Rules, Md. Rules 828, 830-31, 1028, 1030-31, at present Rule 510 b does require the submission of a written exception fully presenting the law and the facts concerning the reserved issue to the trial judge for his signature. After a point or question has been properly reserved, so long as the appeal to the court in banc has not been carried through to hearing and determination it can be abandoned by the moving party in favor of the usual appellate route if a timely and otherwise proper appeal has been or may be noted, *State Roads Comm. v. Smith,* 224 Md. 537, 544, 168 A. 2d 705, 708-09 (1961), but once a determination is made by the court in banc, its decision is final as to the party who sought review by that court. *Shueey v. Stoner,* 47 Md. 167, 170 (1877); Md. Code (1974), § 12-302 (d) of the Courts Article. This is not the case with the nonmoving party, however, for he is entitled to further appellate review of a decision of the court in banc that is adverse to his interests. *Estep v. Estep,* 285 Md. 416, 420-21, 404 A. 2d 1040, 1042-43 (1979); *Buck v. Folkers,* 269 Md. 185, 187-88, 304 A. 2d 826, 827-28 (1973).[7]

Against this backdrop, we turn to the two cases now before us, which, having presented the identical constitutional issue, were argued at the same sitting of this Court, and, accordingly, will be considered together in this opinion. The initial decision that section 22 was unconstitutional came about in the course of petitioner Allan R. Washabaugh's appeal to a court in banc, which was composed of judges from the Seventh Judicial Circuit of Maryland, in which he

---

6. With regard to the reservation of a point for consideration by a court in banc, we see no impediment to the adoption of a rule by an appropriate authority providing that any duly noted objection sufficient to permit review by the Court of Special Appeals would constitute a "reservation" within the meaning of section 22. Such a rule, however, may require accommodation to, or amendment of, Maryland Rule 510 b.

7. For a further discussion of practice before a court in banc see 4 H. Sachs, *Poe's Pleading and Practice* § 839 A, at 759-63 (6th ed. 1975).

challenged the Prince George's County Circuit Court's (Woods, J.) decree of March 7, 1978, awarding alimony to his wife, respondent Dorothy M. Washabaugh. Citing a recent nisi prius decision in which a three-judge panel of the Supreme Bench of Baltimore City held section 22's in banc appeal procedure was not available to litigants in that city, *In re Grand Jury Investigation,* Misc. No. 94 (Sup. Bench Balt. City Oct. 18, 1977), *reprinted in* Daily Record, October 27, 1977, at 3, the court in banc, which was convened to hear petitioner Washabaugh's appeal with three judges of the Seventh Judicial Circuit sitting, requested, sua sponte, that the parties address the question of section 22's constitutionality under the fourteenth amendment's equal protection clause. Upon motion of Mrs. Washabaugh, the membership of the court in banc was expanded so that all fifteen judges of the Seventh Judicial Circuit sat to hear argument on the issue of section 22's constitutionality.[8] On October 17, 1978, by a division of eight to seven, a majority of those judges found that provision to be in violation of the equal protection clause and dismissed Mr. Washabaugh's appeal to the court in banc. Although this dismissal came too late for the husband to initiate a challenge of the circuit court's alimony decree by a direct appeal to the Court of Special Appeals, he nonetheless filed a timely appeal with the intermediate appellate court contesting the court in banc's dismissal order and we granted certiorari prior to that court's hearing the matter.

Hazel D. Daniel, petitioner in the second case we here consider, became embroiled in the controversy now before us in attempting to obtain a determination by a court in banc of the propriety of the Prince George's County Circuit Court's (Mason, J.) entry of a judgment against her as being liable on a debt to respondent Steele's Carpet Service, Inc. On October 24, 1978, her appeal was dismissed by the court in banc, also composed of three judges of the Seventh Judicial Circuit, on the basis of the decision in petitioner Washabaugh's case. This dismissal, however, came within

---

8. The propriety of the decision to seat all fifteen judges of the Seventh Circuit to decide the question of section 22's constitutionality will be commented upon near the close of this opinion.

thirty days after the circuit court's final judgment was entered against Mrs. Daniel and, as a consequence, she was able, under Maryland Rule 1012 a, to file a timely appeal to the Court of Special Appeals questioning both the trial court's determination and the dismissal of her appeal by the court in banc. Once more we granted certiorari prior to consideration by the Court of Special Appeals.

In deciding the constitutional issue presented by these two cases, we are confronted initially with the question of whether this Court has jurisdiction to review the matter. Pointing to section 22's admonition that a court in banc's determination "shall be the effective decision in the premises, and conclusive, as against the party, at whose motion said points, or questions were reserved," Md. Const., Art. IV, § 22; *accord,* Md. Code (1974), § 12-302 (d) of the Courts Article, and to this Court's interpretation of that language in *Medical Examiners v. Steward,* 207 Md. 108, 113 A. 2d 426 (1955), the majority of the court in banc in petitioner Washabaugh's case declared that any review of that court's decision by any tribunal was effectively foreclosed. We disagree.

The controversy in *Steward* arose as a result of an attempt by the Board of Medical Examiners to procure review by a court in banc of a circuit court's decision reversing the board's revocation of Dr. Steward's license to practice medicine. The appeal was taken by the commission despite a statutory provision expressly making a circuit court's decision on such a matter final. The court in banc, finding it did not have jurisdiction to hear the appeal because the decision of the circuit court was final and not further appealable, dismissed it and the board sought review by the Court of Appeals. Noting that the court in banc "had the power to decide the question of its own jurisdiction," *id.* at 111 [427], our predecessors dismissed the appeal to this Court because the court in banc's determination was conclusive as against the board, the party reserving the question.

While it is readily apparent *Steward* settles the question of whether a party who reserves a point for review under section 22 can appeal a court in banc's determination that it has no

jurisdiction, the cases now before us present a situation entirely different from the one confronting this Court in *Steward.* Going beyond a mere finding that they lacked jurisdiction, the courts in banc in the two cases now before us dismissed the appeals because they, as courts, did not constitutionally exist to hear them. In considering the impact of *Steward* upon the issue of our jurisdiction in the present cases, we conclude that it is one thing for a court, as did the court in banc in *Steward,* to acknowledge its juridical being but declare that it is precluded from hearing a given case because the action is not properly before it, and quite another for such a court to declare itself without power to hear any case because, as a matter of constitutional law, it simply cannot or does not exist. When such a determination was made here, it struck at the heart of the court in banc's existence *vel non* as a deliberative body constitutionally vested with judicial power. In this situation, in which the court in banc attempted to commit suicide after penning a note stating it was doing so because its existence displeased a higher authority, review by this Court at the instance of any party is authorized, and perhaps uniquely so, on the basis of our constitutionally created status as the final repository of judicial power in Maryland whose decisions are conclusive.[9] *See* Md. Const., Art. IV, §§ 1, 15; *cf. Johnson v. Board of Zoning Appeals,* 196 Md. 400, 409, 76 A. 2d 736, 740 (1950). Thus, the instant cases are properly before us for review, it being preposterous to suppose that the framers of our Constitution would have contemplated any other result.[10]

---

**9.** While it might be contended that any invocation of our appellate jurisdiction in this instance would require that the appeal be exclusively to this Court, thereby making petitioners' appeals to the Court of Special Appeals improper, since these cases are now before us — either by writ of certiorari, if an appeal correctly lies to the Court of Special Appeals, or by way of direct appeal to us, these parties' petitions for certiorari being tantamount to notices of appeal that were seasonably filed within thirty days of the dismissal orders of the courts in banc — we detect no impediment to our proceeding to a decision on the constitutional issue raised.

**10.** Since this litigation did not take place in Baltimore City, substantial questions exist regarding the standing of any of the parties now before this Court to raise the issue of section 22's constitutionality, *see* Gathwright v. Baltimore, 181 Md. 362, 371, 30 A. 2d 252, 257 (1943); however, our disposition of this appeal on other grounds makes it unnecessary that we resolve this possible standing issue.

We come then to the focal issue posed by these appeals: Whether, in affording the right to an in banc appeal, section 22 of Article IV of the Maryland constitution violates the equal protection clause of the federal constitution's fourteenth amendment. This question is only raised, however, if, as eight of the judges of the Seventh Circuit and at least three judges of the Supreme Bench of Baltimore City apparently believe, section 22 does not grant litigants in Baltimore City any right to utilize the in banc appeal. We find that we need not and therefore do not reach that issue, for, even assuming section 22 does not apply to Baltimore City, there nonetheless is no violation of the fourteenth amendment's equal protection clause.

Many decisions of the Supreme Court of the United States, and of this Court as well, have set forth what is now the almost universally recognized analysis for ascertaining whether a state statutory or constitutional provision violates the equal protection clause of the federal constitution. Initially, as those authorities make plain, an assessment must be made as to whether the enactment in question impinges on the exercise of any fundamental constitutional right, *e.g., Elections Bd. v. Socialist Workers Party,* 440 U. S. 173, 99 S. Ct. 983, 991, 59 L.Ed.2d 230 (1979); *Zablocki v. Redhail,* 434 U. S. 374, 388, 98 S. Ct. 673, 54 L.Ed.2d 618 (1978); *Massage Parlors, Inc. v. City of Balto.,* 284 Md. 490, 496, 398 A. 2d 52, 56 (1979), or disadvantages any suspect class, *e.g., Loving v. Virginia,* 388 U. S. 1, 11, 87 S. Ct. 1817, 18 L.Ed.2d 1010 (1967) (race); *Oyama v. California,* 332 U. S. 633, 646, 68 S. Ct. 269, 92 L. Ed. 249 (1948) (national origin); *Massage Parlors, Inc. v. City of Balto., supra,* 284 Md. at 496, 398 A. 2d at 56, thereby requiring strict scrutiny to determine if that provision promotes a compelling state interest. In the instant cases it has not been contended, and properly so in our estimation, that any suspect class is involved. Moreover, no argument has been made that the right to an in banc appeal allegedly denied to parties before the Baltimore City courts is fundamental as "a right ... explicitly or implicitly guaranteed by the [federal] Constitution," *San Antonio School District v. Rodriguez,* 411 U. S. 1, 33, 93 S. Ct. 1278,

36 L.Ed.2d 16 (1973), it being established that a state is not constitutionally compelled to provide appellate courts or afford a right to appellate review. *E.g., Ortwein v. Schwab,* 410 U. S. 656, 660, 93 S. Ct. 1172, 35 L.Ed.2d 572 (1973) (per curiam); *Griffin v. Illinois,* 351 U. S. 12, 18, 21, 76 S. Ct. 585, 100 L. Ed. 891 (1956); *Criminal Inj. Comp. Bd. v. Gould,* 273 Md. 486, 500, 331 A. 2d 55, 64 (1975). Strict scrutiny being unnecessary, we look to the alternative test for determining if section 22 passes constitutional muster under the equal protection clause, that is, whether it complies with the so-called "rational basis test," as "bear[ing] a rational relation to or rest[ing] upon some ground of difference having a fair and substantial relation to a legitimate state objective." *Massage Parlors, Inc. v. City of Balto., supra,* 284 Md. at 496-97, 398 A. 2d at 56.

In seeking to apply the rational basis test in these cases, we are guided to some extent by this Court's decision in *Davidson v. Miller,* 276 Md. 54, 344 A. 2d 422 (1975), where we were also confronted with the question of a Maryland constitutional provision's validity under the equal protection clause of the fourteenth amendment. Subjected to attack in *Davidson* was section 8 of Article IV of our Constitution, which granted litigants the right to one automatic removal from the court in which their civil case was filed to any other court having similar jurisdiction. The equal protection problem identified in *Davidson* resulted from the fact that the automatic removal right granted by section 8 could be gratified in Baltimore City by transferring a case from one of the three common law civil courts to another of those courts within the city, while in the counties an automatic removal would require that the case be sent to an entirely different subdivision.[11] *Id.* at 66-67 [430]. In examining the validity of the territorial differentiation authorized by this provision, we first observed that, generally speaking, there exists no federal constitutional requirement of intrastate territorial uniformity with regard to the vesting and exercise of judicial power. As support for that proposition, this Court

---

11. For a further discussion of the Baltimore City judicial system see pages 409-10 *infra.*

in *Davidson* took particular notice of the United States Supreme Court's decision in *Missouri v. Lewis*, 101 U. S. 22, 25 L. Ed. 989 (1880), which, as it involved a disparity within a state pertaining to appellate judicial review, is of special interest here. In *Lewis*, an unsuccessful equal protection challenge was made to Missouri's appellate procedure whereby litigants in the City of St. Louis and its surrounding environs, in order to obtain appellate review, were forced to go to an intermediate appellate court with a subsequent limited right of appeal to the state's supreme court, while elsewhere in the state appeals were filed directly in the Supreme Court of Missouri. In illustrating the United States Supreme Court's views concerning the constitutionality of such a procedure, this Court in *Davidson* quoted at length from the *Lewis* opinion, a course we will likewise undertake here because of that decision's factual similarity and particular relevance to the circumstances present in the two cases now before this Court.

> As respects the administration of justice, [a state] may establish one system of courts for cities and another for rural districts, one system for one portion of its territory and another system for another portion. Convenience, if not necessity, often requires this to be done, and it would seriously interfere with the power of a State to regulate its internal affairs to deny to it this right. We think it is not denied or taken away by anything in the Constitution of the United States, including the amendments thereto.
>
> We might go still further, and say, with undoubted truth, that there is nothing in the Constitution to prevent any State from adopting any system of laws or judicature it sees fit for all or any part of its territory. If the State of New York, for example, should see fit to adopt the civil law and its method of procedure for New York City and the surrounding counties, and the common law and its method of procedure for the rest of the State, there is nothing

in the Constitution of the United States to prevent its doing so. This would not, of itself, within the meaning of the Fourteenth Amendment, be a denial to any person of the equal protection of the laws. If every person residing or being in either portion of the State should be accorded the equal protection of the laws prevailing there, he could not justly complain of a violation of the clause referred to. For, as before said, it has respect to persons and classes of persons. It means that no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other classes in the same place and under like circumstances.

The Fourteenth Amendment does not profess to secure to all persons in the United States the benefit of the same laws and the same remedies. Great diversities in these respects may exist in two States separated only by an imaginary line. On one side of this line there may be a right of trial by jury, and on the other side no such right. Each State prescribes its own modes of judicial proceeding. If diversities of laws and judicial proceedings may exist in the several States without violating the equality clause in the Fourteenth Amendment, there is no solid reason why there may not be such diversities in different parts of the same State. A uniformity which is not essential as regards different States cannot be essential as regards different parts of a State, provided that in each and all there is no infraction of the constitutional provision. Diversities which are allowable in different States are allowable in different parts of the same State. Where part of a State is thickly settled, and another part has but few inhabitants, it may be desirable to have different systems of judicature for the two portions — trial by jury in one, for example, and not in the other. Large cities may require a multiplication of courts and a peculiar arrangement of jurisdictions. It would

be an unfortunate restriction of the powers of the State Government if it could not, in its discretion, provide for these various exigencies. [101 U. S. at 30-32.]

As we further observed in *Davidson,* since *Lewis* the Supreme Court has given continued recognition to the principle that uniformity throughout the limits of a state is not in and of itself a prerequisite to meeting the requirements of the fourteenth amendment's equal protection clause. *North v. Russell,* 427 U. S. 328, 338-39, 96 S. Ct. 2709, 49 L.Ed.2d 534 (1976); *Salsburg v. Maryland,* 346 U. S. 545, 552, 74 S. Ct. 280, 98 L. Ed. 281 (1954); [12] *Ocampo v. United States,* 234 U. S. 91, 98-99, 34 S. Ct. 712, 58 L. Ed. 1231 (1914); *Mallett v. North Carolina,* 181 U. S. 589, 597-99, 21 S. Ct. 730, 45 L. Ed. 1015 (1901); *Chappell Chemical Co. v. Sulphur Mines Co.,* 172 U. S. 474, 475, 19 S. Ct. 268, 43 L. Ed. 520 (1899); *Hayes v. Missouri,* 120 U. S. 68, 72, 7 S. Ct. 350, 30 L. Ed. 578 (1887); *accord, e.g., Walber v. Piggins,* 381 Mich. 138, 160 N.W.2d 876, 878 (1968); *Sullivan v. Hang,* 82 Mich. 548, 46 N. W. 795, 796-98 (1890); *Leach v. Auwell,* 154 App. Div. 170, 138 N.Y.S. 975, 981 (1912); *Quattrone v. Simon,* 85 Misc. 357, 147 N.Y.S. 448, 450 (Sup. Ct. 1914); *People v. Coleman,* 4 N.Y.S. 417, 421-22 (Sup. Ct. 1889); *State ex rel. Johnson v. Cady,* 50 Wis. 2d 540, 185 N.W.2d 306, 312-13 (1971). Thus, there being no constitutional limitation per se upon territorial differentiations in judicial organization or procedures, this Court in *Davidson,* as we now do, turned to a consideration of whether a rational basis existed for the distinction in question.

---

12. As we pointed out in Davidson v. Miller, 276 Md. 54, 72 n. 8, 344 A. 2d 422, 433 n. 8 (1975), the *Salsburg* court's holding, which provided that a statute allowing illegal evidence of gambling offenses to be used at trials only in Anne Arundel County did not deny equal protection of the laws, has been overshadowed by the Supreme Court's later ruling in Mapp v. Ohio, 367 U. S. 643, 660, 81 S. Ct. 1684, 6 L.Ed.2d 1081 (1961), that all illegally seized evidence is inadmissible in a state court. We also note that the Supreme Court has subsequently questioned the continuing validity of its decision in *Ocampo v. United States,* cited in the text above, in that it is no longer true that an arrest warrant can be issued solely upon a prosecutor's information, as that decision held. Gerstein v. Pugh, 420 U. S. 103, 118 n. 20, 95 S. Ct. 854, 43 L.Ed.2d 54 (1975).

In beginning our analysis, we think it important to point out that we are not dealing here, as we were in *Davidson,* with discrimination that, while not itself violative of, necessarily impacts heavily upon a fundamental right. In *Davidson,* in the course of determining whether section 8 of Article IV was unconstitutional, we observed it was important to remember that "[a]lthough the United States Constitution does not require that a state provide an absolute, as distinguished from a discretionary, right of removal, ... removal when necessary to obtain a fair and impartial jury trial is basic to the concept of justice as guaranteed by both the law of this State and the Federal Constitution," 276 Md. at 78-79, 344 A. 2d at 436-37 (footnote omitted), and, therefore, any contention concerning a rational basis for a differentiation in the applicable removal rights had to be scrutinized with this in mind. Here, however, the discrimination involved is entirely different for not only is there no fundamental right to an appeal or to a given appellate process, but in this instance there is no adverse residual effect upon any fundamental right. In fact, section 22, when it is applicable, has minimal impact upon the appeal process as all dissatisfied litigants in those jurisdictions have the option of a normal appeal to the Court of Special Appeals, with only those electing to travel the court in banc route being bound by that court's decision.

Moving then to a determination of the constitutionality of section 22 under the rational basis test, we initially take notice, as we did in *Davidson,* of the principle "that a rational basis, and thus constitutionality for equal protection purposes, will be presumed unless 'a clear and convincing showing by the party assailing the legislative classification [proves] that it does not rest upon any reasonable basis, but is essentially arbitrary.'" 276 Md. at 79, 344 A. 2d at 437 (quoting *Matter of Trader,* 272 Md. 364, 400, 325 A. 2d 898, 417 (1974)). In *Davidson,* this Court examined the rational bases suggested to justify precluding Baltimore City litigants from automatic removal — the probability that jurors drawn from a heavily populated metropolis would be less likely to have pretrial knowledge about a particular case, so as not to prejudice them, than those in more sparsely settled counties;

the possibility that the transfer of cases outside of Baltimore City would overwhelm the circuit courts of the counties; and the great potential for abuse of the right to automatic removal by Baltimore City litigants — and found them totally without foundation. *Id.* at 79-82 [437-39]. Here, a rational basis supporting the preclusion of Baltimore City litigants from access to review by a court in banc that was suggested, but found wanting, by the majority in petitioner Washabaugh's case, is the desire to avoid the additional encumbrance such appeals might impose upon Baltimore City's heavily burdened judicial machinery. As support for their conclusion that section 22 does not rest upon such a rational basis, the majority of the court in banc relied mainly on population figures and caseload statistics taken from the Administrative Office of the Courts' 1976-77 Annual Report of the Maryland Judiciary that, they thought, showed the Baltimore City courts were no more burdened than were those of the heavily populated counties of this State. While we do not quarrel with the use of statistical data, when appropriate, as one aid in examining an equal protection question, its manner of utilization by the court in banc here was incorrect in that the statistics put forth were not sufficient to support that court's conclusion. The general population figures used, in and of themselves, give no conclusive indication about the litigational burden upon the Baltimore City courts, while the caseload statistics used by the court in banc, encompassing only a one year sampling, are inadequate to warrant taking the drastic step of destroying a portion of this State's basic law that has stood for more than a century. Accordingly, there being an absence of sufficient proof, we are not persuaded by the views expressed by the majority of the court in banc here.[13]

Even if we were to accept the finding of the court in banc that the caseload in Baltimore City is not significantly

---

13. We have attached to this opinion an appendix that sets forth more fully the arguments and statistics the court in banc utilized to support its conclusion, as well as our own analysis of the disparity in the caseload between Baltimore City and the counties, which is based on a more expansive sampling, including figures for the years 1977-78 that were not available to the court in banc when it was considering petitioner Washabaugh's case.

different from that of the circuit courts sitting in the more populous counties of this State so as to justify precluding litigants in that city's courts from having the opportunity to utilize section 22, nonetheless there appears to be, at the very least, one other rational basis for not providing in banc appeals in that city — the complex nature of Baltimore City's court system. There, six tribunals, as opposed to the single circuit court in each county, comprise the judicial system on the circuit court level: the Supreme Bench of Baltimore City, the Superior Court of Baltimore City, the Court of Common Pleas, the Baltimore City Court, the Circuit Court of Baltimore City, and the Criminal Court of Baltimore. Md. Const., Art. IV, § 27. Besides having varied jurisdictional domains, *id.* §§ 28-30, 33, each of these courts is presided over, on a rotating basis, by one or more of the twenty-two judges who comprise the Supreme Bench of Baltimore City, *id.* § 32. This proliferation of courts and judges necessarily would cause greater difficulty and inconvenience in coordinating in banc appeals in Baltimore City than in any other circuit, thereby constitutionally justifying the elimination from the judicial process of this type of an appeal in the Eighth Circuit.

For the reasons we have just expressed, we are unable to concur with the decisions of the two courts in banc here and instead find that the exemption of Baltimore City, if indeed such an exclusion exists, from the appellate procedure afforded by section 22, does not violate the equal protection of the laws guaranteed by the fourteenth amendment to the United States Constitution. Having reached this conclusion, the orders of the court in banc dismissing these appeals must be vacated and the cases remanded for a decision on the issues originally raised by the petitioners.

As a final note, since the cases here must now be considered on their merits by a court in banc, we believe it desirable to point out, because there seems to be some confusion on the matter, that on remand each action should be heard by a court consisting of only three of the Seventh Judicial Circuit's judges. As we previously noted, at Mrs. Washabaugh's urging the court in banc that was convened to hear the appeal

requested by her husband subsequently was expanded to include all of the fifteen judges of the Seventh Judicial Circuit. This was required, according to Mrs. Washabaugh, because at the time of section 22's adoption in 1867 the entire membership of each judicial circuit except the eighth, Baltimore City, consisted of only three judges so that section 22's declaration that "the three Judges of the Circuit" shall sit on the court in banc was really a requirement that every judge in a judicial circuit sit to consider each reservation to that appellate court. *See* 1 H. Sachs, *Poe's Pleading and Practice* § 19, at 26 n. 63 (6th ed. 1970). We find, however, that the constitutional drafters' specific use of the term "three," as opposed to a reference to "all" the judges of the circuit, demands that any ambiguity be resolved in favor of treating "three" as a numerical rather than a descriptive term. Certainly, any doubt that may have existed about this question has been resolved by the 1978 constitutional amendment reenacting section 22 with a slight stylistic change, *see* note 1 *supra,* because each of the judicial circuits have been constitutionally required since 1960 to have at least four judges, *see* Md. Const., Art. IV, § 21 (b), yet section 22, as readopted by the voters a little more than six months ago, retains the reference to "the three Judges of the Circuit." We also mention that we cannot agree with the dissent in petitioner Washabaugh's case that the circuit courts' power to "regulate, by rules, the mode and manner of presenting [in banc] points," *id.* § 22, gives the circuit courts the authority, despite an explicit constitutional declaration on the subject, to regulate, as a matter of procedure, the number of judges who constitute a court in banc. Such license would allow the circuit courts to make a substantive change in the Maryland constitution under the guise of a supposed housekeeping rule, a result we do not think was contemplated by the drafters of section 22. Certainly, this court under its present constitutional authority could not validly invoke its rulemaking power, *id.* § 18 (A), to increase our constitutionally prescribed membership of seven, *id.* § 14, and such authority likewise is lacking for any circuit court that might seek to take such action with regard to section 22

appeals.[14] On remand, therefore, the courts in banc that hear these appeals shall consist of only three members.[15]

*Order dismissing the appeal in No. 89*
*vacated and case remanded to the*
*court in banc for consideration of*
*points properly reserved.*
*Costs to abide the final result.*
*Order dismissing the appeal in No. 90*
*vacated and case remanded to the*
*court in banc for consideration of*
*points properly reserved.*
*Costs to abide the final result.*

## APPENDIX

In the *Washabaugh* case, the majority of the court in banc set out various statistics they claim conclusively demonstrate that the circuit-level courts in Baltimore City are carrying no greater litigational load than several other circuits' courts and, from this, they reason that any differentiation created by section 22 between the Eighth Circuit and the other circuits has no rational basis. Using data found in the Administrative Office of the Courts' 1976-77 Annual Report of the Maryland Judiciary, the in banc majority asserted that the following factors substantiated that the city's courts are not disproportionately burdened in comparison to those of the

---

14. In so stating, we express no view as to whether the number of judges constituting a court in banc can be altered by either the General Assembly or possibly this Court, acting pursuant to its rulemaking power, Md. Const., Art. IV, § 18 (A), under section 22's final direction that "this Section shall be subject to such provisions as may hereafter be made by Law."

15. We note that the fact that fifteen judges, instead of three, sat as a court in banc in declaring section 22 unconstitutional provides an alternative basis for vacating their order purporting to dismiss petitioner Washabaugh's case. Having been convened in contravention of section 22, any decision or order of that "rump" court was void and without effect. *Cf.* U.S. v. American-Foreign SS. Corp., 363 U. S. 685, 691, 80 S. Ct. 1336, 4 L.Ed.2d 1491 (1960) (judgment of federal circuit court. sitting en banc, vacated because retired circuit judge sat on panel in violation of statute governing en banc appeals); Ellentuck v. Klein, 570 F. 2d 414, 424 (2d Cir. 1978) (disqualification of one member would strip appellate panel of subject matter jurisdiction); Wilcox v. Supreme Council of Royal Arcanum, 210 N.Y. 370, 104 N. E. 624, 626 (1914) (decision of New York Court of Appeals would be void if member who participated in determination was later shown to be disqualified).

other circuits of the State: 1) Baltimore City is no longer the only heavily inhabited political subdivision of the State; 2) a comparison of the number of judges in the various circuits indicates that several, per judge, served more people than those in Baltimore City; 3) the yearly percentage of increase in the number of pending cases is smaller in Baltimore City than in other comparable circuits; and 4) as each appeal to the Court of Special Appeals is a potential in banc appeal, a comparison of statistics as to the number of appeals taken per judge in the larger counties and in Baltimore City shows that the potential for in banc appeals in the city poses no more of a threat to overburdening the city's courts than already exists for the circuits of comparable population. Our closer examination of these statistics, however, reveals that they fail to support the conclusion the majority of the court in banc ascribes to them.

As to the first two factors, there can only be agreement that a number of counties in Maryland have enjoyed a measure of growth so that Baltimore City is no longer the only highly populated political subdivision in this State, *see Davidson v. Miller,* 276 Md. 54, 80, 344 A. 2d 422, 437 (1975); and that the number of individual inhabitants per judge in Baltimore City is lower than in some other heavily populated jurisdictions, Ad. Office of the Courts, Annual Report of the Maryland Judiciary 1977-78 — Statistical Abstract 58 (1978). Neither of these facts indicate anything about the current litigational burden borne by the courts of Baltimore City, however, for, as is obvious from the fact that over one-third of all cases filed in this State in 1977-78 were initiated in that metropolis, *see id.* at 44, due no doubt to its position as a thriving seaport and commercial center, the amount of litigation its courts must handle is likely to be more than they would bear in proportion to the city's population. The first and second factors, therefore, lend no support to the court in banc's assertion that there is no rational basis for any distinction based on the caseload of the Baltimore City courts.

The third and fourth factors relied on by the majority also fail to bolster the conclusion of the court in banc. Referring to statistics for the year 1976-77, that court noted that the

percentage increase in pending cases at the end of that fiscal year was lower in Baltimore City than in several of the other circuits of comparable population, thereby indicating a smaller increase in backlogged cases. While these figures in isolation do indicate that for that one year the percentage increase in pending cases was lower in Baltimore City than in some other circuits, their comparison with the figures for the years immediately before and after 1976-77, all of which are set out in the margin,[1] is enlightening. After examining this data, it appears, contrary to the assertions of the court in banc that no clear trend emerges sufficient to justify a definite conclusion. Moreover, in the context of the large number of cases filed in Baltimore City, what seems to be a small increase in terms of percentage becomes a much more forbidding burden when calculated, as we have done in the table in the margin, on the basis of the increase in the number of pending cases per judge,[2] thereby almost totally depriving

---

1.

Increase in Pending Cases
(Percentage)

| Circuit | 1974-75 | 1975-76 | 1976-77 | 1977-78 |
|---|---|---|---|---|
| Third | 9.1 | 8.9 | 3.7 | 15.1 |
| Fifth | 11.3 | 14.1 | 13.8 | 19.2 |
| Sixth | 9.9 | 5.1 | 2.6 | 7.3 |
| Seventh | 7.8 | 24.9 | 7.1 | 15.9 |
| Eighth (Baltimore City) | .9 | 3.2 | 3.6 | 18.3 |

These figures were extrapolated from the following sources: Ad. Office of the Courts, Annual Report of the Maryland Judiciary 1977-78 — Statistical Abstract 35, 37-40 (1978) [hereinafter cited as 1977-78 Annual Report Statistical Abstract]; Ad. Office of the Courts, Annual Report of the Maryland Judiciary 1976-77 — Statistical Abstract 27, 29-32 (1977) [hereinafter cited as 1976-77 Annual Report Statistical Abstract]; Ad. Office of the Courts, Annual Report 1975-76 95, 97-100 (1976) [hereinafter cited as 1975-76 Annual Report]; Ad. Office of the Courts, Annual Report 1974-75, at 94, 96-99 (1975) [hereinafter cited as 1974-75 Annual Report].

2.

Increase in Pending Cases
(Cases per judge)

| Circuit | 1974-75 | 1975-76 | 1976-77 | 1977-78 |
|---|---|---|---|---|
| Third | 69.0 | 74.3 | 33.1 | 141.4 |
| Fifth | 98.3 | 136.8 | 152.6 | 201.7 |
| Sixth | 137.0 | 78.3 | 42.0 | 120.0 |
| Seventh | 55.0 | 190.2 | 67.4 | 141.1 |
| Eighth | 31.4 | 110.1 | 129.2 | 314.3 |

the statistics relied on by the court in banc of their force. Finally, as to the number of appeals to the Court of Special Appeals on a per circuit court judge basis, also set out in the margin,[3] this statistic is likewise ambiguous in establishing a trend, indicating only that the number of appeals from Baltimore City is as great as or greater than those from counties of comparable size while revealing nothing about whether the Baltimore City courts have too heavy a caseload to justify their exemption from the in banc appeal procedure of section 22.

---

These figures were extrapolated from the following sources: 1977-78 Annual Report Statistical Abstract 35, 37-40, 58; 1976-77 Annual Report Statistical Abstract 27, 29-32, 50; 1975-76 Annual Report 80, 95, 97-100; 1974-75 Annual Report 78, 94, 96-99.

3.

Appeals Per Judge

| Jurisdiction | 1974-75 | 1975-76 | 1976-77 | 1977-78 |
|---|---|---|---|---|
| Baltimore City | 18.2 | 21.9 | 18.4 | 18.3 |
| Prince George's County | 15.9 | 19.9 | 22.6 | 17.2 |
| Baltimore County | 14.5 | 16.6 | 17.6 | 14.9 |
| Montgomery County | 12.8 | 16.0 | 19.4 | 20.6 |
| Anne Arundel County | 8.3 | 9.3 | 10.4 | 15.1 |

These figures were extrapolated from the following sources: 1977-78 Annual Report Statistical Abstract 21, 58; 1976-77 Annual Report Statistical Abstract 13, 50; 1975-76 Annual Report 71, 80; 1974-75 Annual Report 69-70, 78.