RUTH T. SMITH ET AL. *v.* COUNTY EXECUTIVE OF ANNE ARUNDEL COUNTY, MARYLAND ET AL.

[No. 1092, September Term, 1980.]

*Per Curiam Order October 3, 1980.*

*Opinion Filed November 6, 1980.*

The cause was argued before GILBERT, C. J., and MORTON and MELVIN, JJ.

*Christopher L. Beard* for appellants.

*Frederick C. Sussman, Assistant County Solicitor for Anne Arundel County,* for appellees.

PER CURIAM
*ORDER*

This cause having been advanced for argument before this Court by Order dated 2 October 1980, pursuant to Maryland Rule 1045 c. and counsel heard and arguments considered, it is this 3rd day of October, 1980, by the Court of Special Appeals of Maryland, ORDERED, for reasons to be stated in an opinion to be hereafter filed, that appellees' Motion to Dismiss is denied; and,

IT IS FURTHER ORDERED, that the Order of the Circuit Court for Anne Arundel County filed September 30, 1980, dismissing the above captioned case be and is hereby reversed, inasmuch as the trial court lacked jurisdiction to

enter the Order, an appeal to the Court en banc having been entered on September 26, 1980, thereby divesting the trial court of jurisdiction. Mandate to issue forthwith. Costs to be paid by appellees.

GILBERT, C. J., delivered the opinion of the Court.

This is an unorthodox appeal, in an unorthodox case, brought in an unorthodox manner from an unorthodox series of rulings in the Circuit Court for Anne Arundel County.

On October 3, 1980, we reversed an order of that court which dismissed a petition for a writ of mandamus and ancillary relief that had been filed by the appellant, Ruth T. Smith.[1] We took that action in a *per curiam* order issued the same day. We shall now explain why we acted as we did.

From the record it is learned that on August 18, 1980, a petition containing the purported signatures of 11,186 registered voters of Anne Arundel County was filed with the County Executive. The petition proposed the amendment of the County Charter by adding a section to be known as "Section 723." The proposed new section would have required "that the full faith and credit of the County shall not, except in emergency, be pledged for debt or construction of internal improvement without the prior approval of the voters of the County."[2]

The County Executive transmitted the petition to the Administrator of the Board of Supervisors of Elections for Anne Arundel County (Board). Pursuant to Md. Ann. Code art. 33, § 16-4 (b) (1980 Cum. Supp.), "the form and arrangement of the . . . ballots to be used in the election . . . [was] prepared by the board and made available for inspection by any registered voter." The ballot was, we were told, posted in the window of the building in which the Board is housed. The posting occurred on August 29, 1980.

Apparently a review by the Board of the signatures on the

---

1. Mrs. Smith is but one of 150 individuals who, along with Barbara Ritch and Petition Committee for Bond Referendum, Inc., are parties to this case. Whenever the name "Smith" or the word "appellant" is used herein, it is to be construed as including all appellants.

2. The effect of the amendment would be to divest the County Executive and the County Council of the power to commit the taxpayers of the County to certain fiscal obligations.

petition resulted in the Board's reducing the number of valid signatures from the 11,186 to 9,924, a total fewer than the number necessary to place a question on the ballot. Subsequently, the County Executive was notified by the Administrator of the Board of the shortage of valid signatures on the petition.

Two days later, September 8, 1980, the Chairman of the County Council wrote to Mrs. Betty G. Eby, the Board's Administrator, to the effect that the Board should consider that the proposed amendment lacked the requisite number of valid signatures and, therefore, could not be on the ballot.

The next day, September 9, 1980, the Board posted the Council Chairman's letter in the same window of the building. We infer it was the same window in which the "form and arrangement" of the ballot had been or was displayed.

Whenever or however the appellants learned that the Board believed the petitions failed for want of necessary signatures is not clear from the record. It is clear, however, that the appellants filed their suit in the circuit court on the 24th day of September 1980. A judge of that court issued a temporary injunction that required the County to advertise the amendment as if it had the required number of valid signatures. The law necessitates that amendments be published at least once a week for the five weeks immediately preceding the election. Hence, had the judge not issued the injunction, the appellants, even if the trial on the merits proved them to be right, would be left with an empty victory because of their inability to comply with the advertising requirements. They would have been in the position of a fighter who scored a knockout after the final bell had sounded, with the result that his opponent won the decision.

The County promptly moved to dissolve the injunction, citing Md. Ann. Code art. 33, § 16-4 (b), which provides in pertinent part:

> "Following five days of public display, a court may not entertain a suit or grant injunctive relief to any party seeking to challenge the form or arrangement

of the ballots or the wording of a constitutional amendment or question on a ballot."

The County reasoned that after the letter from the Chairman of the County Council to the Board was posted in the window for public display on September 9, 1980, the appellants had to bring their action within five days from that date. The suit, however, was not filed until September 24, 1980. Thus, the County argued, and the circuit court agreed, because of the lateness of the filing of the suit, the court was without jurisdiction to hear and decide it. On September 26, 1980, the court dissolved the temporary injunction it had issued two days earlier.

The appellants, in accordance with Md. Rule 510, elected to have the judge's decision "reserved for the consideration of the court *en banc. . . .*" [3] Accordingly, the hearing judge certified the "Reservation and Exception" relative to dissolving the injunction as "accurate" and transmitted the matter to the *en banc* court. Four days later, September 30, 1980, an order was filed by the hearing judge that dismissed the appellant's case totally.

When the matter was heard *en banc* [4] on October 1, 1980, that court was advised of the hearing judge's dismissal of the case. The *en banc* court, having determined that the matter of the dismissal was not reserved, did not decide the question of the dissolving of the injunction, but terminated it on the ground that the issue had been rendered moot by the order of dismissal filed by the hearing judge.

Appellants promptly noted an appeal to this Court from the hearing judge's orders of September 26 and 30, respectively.

On motion filed simultaneously with the appeal, we advanced oral argument to the succeeding day. Counsel for appellants conceded on oral argument that the issue of the dissolving of the injunction was not before us since it had

---

3. The appellants could have proceeded directly to this Court. *See* Md. Cts. & Jud. Proc. (1980 Repl. Vol.) Code Ann. § 12-303 (c) (1).

4. *"En Banc"* (in the bench) is interchangeably used in the following forms: *"in bank," "in banco," "in banc,"* and *"en banke."*

been reserved for an *en banc* decision. Rather, the appellants asserted that the question for us to resolve was the hearing court's dismissal on jurisdictional grounds of their petition for mandamus.

Article IV, § 22 of the Maryland Constitution provides:

"Where any Term is held, or trial conducted by less than the whole number of said Circuit Judges, upon the decision or determination of any point, or question, by the Court, it shall be competent to the party, against whom the ruling or decision is made, upon motion, to have the point, or question reserved for the consideration of the three Judges of the Circuit, who shall constitute a court in *banc* for such purpose; and the motion for such reservation shall be entered of record, during the sitting, at which such decision may be made; and the several Circuit Courts shall regulate, by rules, the mode and manner of presenting such points, or questions to the Court in *banc,* and *the decision of the said Court in banc shall be the effective decision in the premises, and conclusive, as against the party, at whose motion said points, or questions were reserved;* but such decision in *banc* shall not preclude the right of Appeal, or writ of error to the adverse party, in those cases, civil or criminal, in which appeal, or writ of error to the Court of Appeals may be allowed by Law. The right of having questions reserved shall not, however, apply to trials of Appeals from judgments of Justices of the Peace, nor to criminal cases below the grade of felony, except when the punishment is confinement in the Penitentiary; and this Section shall be subject to such provisions as may hereafter be made by Law." (Emphasis supplied.)

Through Md. Rule 510,[5] the Court of Appeals has set out the procedure for invoking the constitutionally permitted *en*

---

5. With respect to criminal causes *en banc, see* Md. Rule 761.

*banc* hearing. The rule is applicable to all the State except Baltimore City. Md. Rule 510 (d).

Some reasons for invocation of Art. IV, § 22 and Rule 510 are that it allows a case to be decided faster and more economically than an appeal to the Court of Special Appeals.[6]

Patently, the constitutional provision and the rule authorize a procedure that operates in the same manner as an appeal. Indeed, it has been said to be a substitute for an appeal. *See Buck v. Folkers,* 269 Md. 185, 187, 304 A.2d 826, 827 (1973); *State Roads Commission v. Smith,* 224 Md. 537, 540, 168 A.2d 705, 707 (1968). The judgment of the *en banc* court is just as final as if it had been decided by the Court of Appeals. Thus, the decision of the *en banc* court, as to the party initiating that procedure, is of greater effect than a judgment of this Court. This is true because even if an appellant loses in this Court, he or she still has the right to seek certiorari to the Court of Appeals. There is no certiorari, however, from a circuit court sitting *en banc.*[7]

Generally, when an appeal is noted to this Court, or in the case of the invocation of the death penalty, to the Court of Appeals, the appellate court is immediately vested with jurisdiction over the case. The trial court's jurisdiction, except in purely ministerial matters, is divested and that court, with the noted exception, is powerless in the case.[8] We see no reason why Rule 510, once triggered, should not, since it operates as an appeal, oust the trial court of jurisdiction over the case and vest it in the *en banc* panel. To hold otherwise would undercut the very purpose of the rule. If, as

**6.** "[I]ts commonly recognized nickname [is] ... 'the poor person's appeal. ...'" Washabaugh v. Washabaugh, 285 Md. 393, 396, 404 A.2d 1027, 1029 (1979).

**7.** Of course, the adverse party, that is, the party who did not invoke Rule 510, may appeal to this Court from the action of the *en banc* court. It is only the party who invokes or triggers the *en banc* hearing that is estopped from further appellate review. *See* Md. Const. Art. IV, § 22.

**8.** State v. McCray, 267 Md. 111, 297 A.2d 265 (1972); Housing Equity Corp. v. Joyce, 265 Md. 570, 290 A.2d 769 (1972); Stacy v. Burke, 259 Md. 390, 269 A.2d 837 (1970); Bullock v. Director of Patuxent Institution, 231 Md. 629, 190 A.2d 789 (1963); Collier v. Collier, 182 Md. 82, 32 A.2d 469 (1943); Link v. Link, 35 Md. App. 684, 371 A.2d 1146 (1977); Rosenbloom v. Electric Motor Repair Co., 31 Md. App. 711, 358 A.2d 617 (1976).

here, a plaintiff could invoke Rule 510 and, after having done so, a defendant then prevails upon the trial court to dismiss the plaintiff's case, the result would be that Md. Const. Art. IV, § 22 and Rule 510 are meaningless unless *all* parties agree to its use.

We are certain that the framers of our constitution and the Standing Committee on Rules of Practice and Procedure as well as the Court of Appeals never intended for Rule 510 to be a sterile act, unilaterally brought into play by one party and just as singularly rendered nugatory by the other. *See generally, Washabaugh v. Washabaugh,* 285 Md. 393, 404 A.2d 1027 (1979).

We think it manifest that the constitutionally permitted circuit *en banc* court is a higher tribunal than is the county circuit court. *Washabaugh v. Washabaugh, supra* at 402, 404 A.2d at 1032. It follows, therefore, that the county circuit or lower court could not dismiss a case over which the higher or *en banc* court had obtained jurisdiction. To do so was error. For the *en banc* court to dismiss the case because the county circuit court had done so simply compounded the error.